COUNTY OF DUVAL, PLAINTIFF IN ERROR, VS. A. W. KNIGHT, DEFENDANT IN ERROR.

1. The face value or par value of a bond for the payment of money and interest thereon at any given time after its issue, in the absence of anything showing the contrary, is the principal and interest then due on it.

2. Under Chapter 4077, Acts of 1891, Duval county issued bonds to the extent of $175,000, to be known as the St. Johns River Improvement Bonds, bearing date November 1, 1892, and having attached thereto, as required by the act, interest coupons bearing interest at the rate of five and one-half per cent per annum, falling due semiannually on the first days of May and November of each year thereafter; and said bonds were placed

in the hands of the county treasurer of said county, to be sold
under the direction of the board of trustees created by said act.
By direction of said trustees said bonds, with coupons attached,
were advertised for sale; the bids to be for the whole issue, to be
delivered either on November 1, 1892, or for the whole issue,
$50,000 to be delivered November 1, 1892, $50,000 on February
1, 1893, $50,000 on April 1, 1893, and $25,000 on June 1, 1893,
with the further statement that no bids would be considered at
less than par. An offer was made and accepted of $101 5-8 for the
bonds, to be delivered $50,000 November 1, 1892, $50,000 Febru-
ary 1, 1893, $50,000 April 1, 1893, and $25,000 June 1, 1893. *Held,*
that by the terms of the contract the purchaser was to pay a
premium of 1 5-8 on the face or par value of the bonds, which
was the principal and interest due thereon when they were de-
livered.

Writ of Error to the Circuit Court for Duval
County.

## *Statement.*

Defendant in error sued plaintiff in error, the decla-
ration alleging in substance, in the first count, that said
county under the terms and provisions of Chapter 4077
laws of Florida, acts of 1891, through its duly authorized
officers, executed its writings obligatory, or bonds, to
the amount of $175,000, known as the St. Johns River
Improvement bonds, for the purpose of improving the
navigation of said river, bearing date on the first day
of November, 1892, and having attached thereto
interest coupons bearing interest at the rate of five and
one-half per cent per year, falling due semi-annu-
ally on the first days of May and November of each
year thereafter, and thereafter placed the same in the
hands of the county treasurer of said county to be sold
under the direction of the board of trustees created by
said act and known as the Trustees of the St. Johns
River Improvement, and the proceeds of said sale to be

turned over to the county treasurer on delivery by him of the bonds to the purchaser; that on the 11th day of July, 1892, said board of trusees by resolution authorized its secretary to advertise for the receiving of bids by said board for the purchase of said $175,000 of bonds with said coupons attached, the said resolution (made a part of the declaration) reciting that the advertisement should be for sealed bids for $175,000 of said bonds to be delivered to the purchaser November 1st, 1892, and also for the purchase of the same bonds delivered as follows: $50,000 November 1st, 1892; $50,000 on February 1st, 1893; $50,000 on April 1st, 1893, and $25,000 on June 1st, 1893, and that said secretary did on the 11th of July, 1892, advertise for bids, the advertisement containing in substance, as to the bonds in question, the same terms as stated in the resolution, with the additional statement that no bids considered at less than par; that the said trustees held out their said secretary as their agent in such matters and relying thereon plaintiff applied to said secretary for further and fuller information in reference to said bonds and the amounts of principal and interest thereon, at the same time informing him that plaintiff intended to bid for the bonds and wanted to send information to others who also wanted to bid, and plaintiff was furnished by said secretary with an official statement dated July 11th, 1892, reciting, in reference to the sale of the proposed issue of bonds dated November 1st, 1892, that the rate of interest was five and one-half per cent. payable May 1st, and November 1st, at American Exchange National Bank, N. Y., and at the county treasurer's office, Jacksonville, Florida, bonds to mature in twenty years, with privilege of forty years, from date, and bids to be made on either the whole issue of $175,000 delivered November 1st, 1892, or

upon the same delivered as follows: $50,000 November 1st, 1892; $50,000 on February 1st, 1893; $50,000 April 1st, 1893, and $25,000 on June 1st, 1893; that plaintiff made his bid for said bonds as follows:

"Hon. Board of Trustees St. Johns River Improvement:

Gentlemen: I hereby offer 101 5-8 for the balance of the St. Johns River Improvement Bonds, to be delivered as follows: $50,000 November 1st, 1892; $50,000 February 1st, 1893; $50,000 on April 1st, 1893; $25,000 on June 1st, 1893. (Signed) A. W. Knight." That said trustees accepted plaintff's said bid and contracted to sell and deliver to him on the terms of said bid said bonds which had under the terms of the law under which they were issued atached thereto at the time of the bid and sale coupons of $27.50 each, payable on May 1st, 1893, and November 1st 1893, and which were sold to plaintiff by the acceptance of his bid, and thereafter on February 1st, 1893, plaintiff, in accordance with his said bid, tendered to the said trustees and to the county treasurer of Duval county $50,812.50 in legal tender notes as payment in full of the $50,000 of bonds to be delivered on that date, and said trustees refused to accept said sum and authorize the delivery of said bonds, but by resolution directed the county treasurer as follows: "Whereas, the said bonds are dated November 1st, 1892, with interest coupons annexed, the treasurer is directed to detach from said bonds before delivering a sufficient amount of said coupons to cover the interest from November 1st, 1892, to February 1st, 1893, and to cancel the same in the presence of the chairman of the board. In case the purchaser of said bonds prefers that the said coupons remain upon the bonds, the said treas-

urer is authorized to receive the said interest in cash from the purchaser." That the said county treasurer thereupon refused to deliver to plaintiff said bonds unless said conditions were complied with, and in addition to the amount which plaintiff was required to pay by his said bid he would permit said treasurer to detach a sufficient number of coupons to cover the interest from November 1st, 1892, to February 1st, 1893, or plaintiff would deliver to said treasurer in addition to said purchase money the further sum of $687.50, claimed as interest on said bonds from November 1st, 1892, to February 1st, 1893, and said treasurer in violation of said contract of sale to the plaintiff by the said trustees wrongfully caused and compelled plaintiff to pay the said sum of $687.50 and neither said treasurer nor said trustees had any authority of law to detach any of said coupons or to demand any interest arising upon said bonds; that thereafter plaintiff, who had contracted to sell to others said bonds with all the coupons attached, did, without any consideration therefor, deliver to said treasurer the said sum of $687.50 under protest and compulsion, accompanying said delivery of money with a written protest to the effect that plaintiff paid the $687.50, claimed as interest aforesaid, subject to his legal rights under his said bid and the offer of sale of the bonds by treasurer, with a reservation of right to sue for the same as money paid under protest.

It is further alleged that the county treasurer accepted said money from plaintiff with full knowledge of his said bid and contract of sale of said bonds with coupons attached, and thereafter informed said trustees in writing of the conditions under which he had received said money and delivered to them a copy of plaintiff's written protest, and also informed them in

writing that he had made separate deposits of the moneys received, the latter sum of $687.50 being deposited separately pending a settlement between plaintiff and said trustees; and further that said treasurer had so informed the board of county commissioners of Duval county and had never paid said money to said trustees, and still keeps and retains said money for the use and benefit of Duval county, and refuses to pay same to plaintiff, and that defendant gave plaintiff no consideration for said money, and wrongfully obtained the same from plaintiff, and still retains the same and refuses to pay it to him, to his damage, &c.

The second count in the declaration is like the first, except it further alleges that defendant received the money and promised and agreed with plaintiff to hold it and return the same to plaintiff if he was under the terms of his purchase of said bonds entitled to same with coupons attached, and it is alleged that plaintiff was so entitled.

Defendant demurred to both counts of the declaration on the grounds: 1st. That neither count showed any cause of action against defendant. 2nd. Because it appears in each count that the money sued for was the interest on bonds which had accrued before the time at which they were to be delivered to plaintiff, and which had accrued before plaintiff paid anything for the bonds.

This demurrer was overruled, and defendant filed pleas, to which plaintiff's demurrer was sustained, and declining to further plead, judgment final was entered against defendant for the sum of $687.50, with interest and costs, which judgment is brought up for review by the writ of error in this case.

The other facts in the case are stated in the opinion of the Court.

*H. Bisbee, C. D. Rinehart and R. B. Archibald,* for Plaintiff in Error.

*John C. Cooper,* for Defendant in Error.

MABRY, J.:   (*After stating the facts.*)

We are of opinion that the declaration does not show a cause of action in favor of plaintiff below, defendant in error here, and that the demurrer to the declaration should have been sustained by the Circuit Court. It is not insisted that the plaintiff in error, the County of Duval, would not in any event, under the facts alleged, as shown by the statement, be liable to the defendant in error for the money sued for, but the point of contention between the parties is whether or not defendant in error has shown any right under the terms of his bond purchase to the six hundred and eighty-seven and 50-100 dollars which he paid in addition to the $50,812.50 on the bonds deliverable February 1st, 1893. As we think defendant in error paid no more on the bonds delivered February 1st, 1893, than he should have paid under the terms of his contract of purchase, the case will be disposed of on this ground.

By Chapter 4077, laws of 1891, the county of Duval was authorized to issue bonds to improve the navigation of the St. Johns river in said county under conditions named in the act, one of which was that the question of issuing the bonds should be submitted to the qualified voters of the county at an election and a ma-

jority should approve the issue. Upon the majority vote of the electors voting at the election the county commissioners of the county were directed to issue bonds to an amount not exceeding three hundred thousand dollars, the proceeds of which to be applied to the work of improving the navigation of the St. Johns river and removing obstructions therefrom within Duval county. The ninth section of the act provides that the county commissioners shall direct the preparation and issuing of the bonds in denominations of five hundred, and one thousand dollars, the principal to be payable at the end of not less than twenty nor more than forty years, and shall bear interest at a rate not exceeding six per cent. per annum, payable semi-annually at the city of Jacksonville and at an agency in New York City. It is also provided that said bonds shall have engraved interest coupons attached thereto payable at the end of periods of six months from the date of the bonds, and the bonds themselves shall be engraved and signed by the chairman of the board of county commissioners and county treasurer with the seal of the county, and delivered to the county treasurer. The tenth section provides that the bonds shall be sold at not less their face value, under the directions of the trustees named in the act, and the proceeds to be deposited with the county treasurer to be disbursed in the improvement of the navigation of the St. Johns river as pointed out.

Counsel for defendant in error contends that under the terms of his contract of purchase, disclosed by the advertisement for bids by the trustees, his offer to buy and its acceptance, he was entitled to have delivered to him on February 1st, 1893, $50,000 of the bonds bearing date November 1st, 1892, with all the coupons thereto attached when issued (this being the only amount

now involved) upon his payment of $50,812.50, which was the principal amount of the bonds with a premium of 1 5-8 per cent. added. Conceding the position that defendant in error was entitled under his contract of purchase to have delivered to him on the 1st of February, 1893, $50,000 of the bonds bearing date November 1st, 1892, with all the coupons originally thereto attached, we think he has misconceived the amount that he was legally bound to pay by his contract on the bonds. Doubtless defendant in error paid $50,812.50 for the bonds delivered on the 1st of November, 1892, which was a premium of 1 5-8 per cent. on the face amount of the bonds then delivered. He tendered this same amount for the bonds that he was entitled to have delivered to him on February 1st, 1893, but under the terms of the advertisement accepted by defendant in error all of the bonds agreed to be purchased, except $50,000, were to be delivered on future dates and it was distinctly stated that no bid was to be considered at less than par. The act of the legislature authorizing the issue of the bonds expressly provides that they shall be sold at not less than their face value, and it would be illegal for the trustees to direct a sale of any of the bonds at less than their face value. We think the offer of defendant in error, which was accepted by the trustees, embraced an agreement to purchase the bonds at 101 5-8 per cent. premium on their face value when delivered, and the ascertainment of this face value solves the problem which has been submitted to the courts. The face value, or par value, of a bond at any given time is the principal and interest then due on it, and there is nothing in the act under which the bonds in question were issued requiring a different construction. Delafield v. State of Ill. 26 Wend. 192; Village of Fort

Edward v. Fish, 86 Hun. 548, 83 N. Y. S. 784; Hunt. v. Fawcett, 8 Wash. 396, 36 Pac. Rep. 318. The principle stated was conceded in the case of Evans v. Tillman, 38 S. C. 238, 17 S. E. Rep. 49. If defendant in error was legally bound to pay 1 5-8 per cent. on the principal and interest on the bonds when delivered to him, and we think he was, it is apparent that he has shown no cause of action, as he has not paid more than he should have paid. It would have been in violation of the statute for the trustees to have agreed to deliver bonds in the future and accept less than their face value, which includes, as we have seen, the principal and interest due on the bonds at the time of payment for them, and if such agreement had been made, it could not have been enforced. A premium of 1 5-8 per cent, the agreed price to be paid for the bonds, on their face value, including principal and interest due when delivered and purchase price received, amounts to all, and even a small sum more than defendant in error paid, and by his own showing he has no cause of action to recover back any money.

The judgment will be reversed with directions to enter an order sustaining the demurrer to the declaration, and for such further proceedings as authorized by law. Ordered accordingly.