## E. J. SMITH *v.* STATE, EX REL.

### [56 South. 179.]

1. STATE BONDS. *Interest. Sale. Par value. Statutes. Construction.*

Under acts of 1910, chapter 99, authorizing the sale of interest bearing state bonds at not less than "par," the "par value" of such bond on the date of its issuance, is a value equal to the principal thereof; on any day subsequent to its issuance it is a value equal to the principal plus accrued interest.

2. STATUTES. *Construction. Prior statutes.*

The rule of construction that in case of doubt and uncertainty the court may in construing a statute, look to prior statutes in order to ascertain the meaning of the words used in the statute under consideration, can never be invoked where the words used have a plain and well settled meaning or where to do so would not remove, but create an ambiguity.

3. SAME.

Where the legislature by means of a series of statutes running through a number of years has been engaged in building up a general scheme or system, all of these statutes must be construed together

in order to arrive at the legislative intent, and the words of the later statute will be given the same meaning as was given to them by the legislature in the former statutes.

4. PAR.  *Par value.  Commercial paper.*

The words "par" and "par value" as applied to commercial paper have a well settled meaning in commercial law and consequently are not subjects of expert testimony.

APPEAL from the circuit court of Hinds county.
HON. W. A. HENRY, Judge.

Suit by the state on the relation of M. S. McNeil, district attorney, against E. J. Smith, state auditor. From an adverse judgment defendant appeals.

The facts are as follows:

This suit was instituted by M. S. McNeil, district attorney, at the instance of Mrs. Emma Edwards, the holder of certain bonds of the state of Mississippi, dated July 1, 1910, issued and sold under chapter 99 of the acts of the legislature of 1910, and is brought against E. J. Smith, auditor, and Geo. R. Edwards, treasurer, to compel the auditor to issue a warrant and the treasurer to pay same for interest coupons maturing January 1, 1911. Payment of these coupons had been refused by the treasurer, because it is alleged that the bonds had not been sold in accordance with the provisions of chapter 99, Laws of 1910, in that they had been sold below par. The Law of 1910 provides that the governor, treasurer, and auditor shall advertise for sealed bids for the bonds authorized, and after due advertisement award them to the highest and best bidder, and, in case there are no bids, the governor, with the advice and consent of the auditor and treasurer, "may negotiate same at private sale for a price not less than par." There were no bids, and the governor, with the advice and consent of the auditor and treasurer, at various times between July 1, 1910, and January 1, 1911, sold the bonds authorized to be issued at their face value with the interest

·coupons attached, thereby giving to the purchasers the benefit of that portion of the interest which had accrued to the date of sale, upon the agreement with the purchaser that the interest coupons would be paid in full upon maturity. It is the contention of the petitioner below that the word "par," as used in the act, is equivalent to "face value," and that a sale of the bonds at face value is legal; while the contention of the state officials is that the sale was below par, because the accrued interest to date of sale was given to the purchasers.

There was a demurrer which raised two points: First, that there was a misjoinder of parties defendant, and that the suit was not brought by the state; and, second, that the petitioner had no right to maintain his suit, since the holders of the interest coupons had a remedy. The court sustained the demurrer as to misjoinder of parties, and dismissed the suit, as to Edwards treasurer, and permitted an amendment so as to show the state of Mississippi as petitioner, on the relation of the district attorney, and overruled that part of the demurrer questioning the right of the district attorney to maintain the suit. The auditor then answered, and the case proceeded to trial on pleadings and proof, resulting in a judgment for the petitioner, granting the writ of mandamus prayed, and commanding the auditor to issue his warrants for the matured interest coupons.

*Potter & Hindman* and *J. A. P. Campbell,* for appellant.

The only question in this case is, where the bonds of the state sold "for a price not less than par?" Was a sale for five hundred dollars of a bond whose value was five hundred and ten dollars, or nearly that, a sale for a price not less than par? When the legislature appropriated twelve thousand dollars to pay interest on six hundred thousand dollars from July 1st, to December 31, 1910, did it intend to pay that, or any part of it, for

money not in the treasury but in the pockets of buyers of bonds who should be induced to buy a gift of interest coupons?

Is it not clear that the legislature expected the bonds to go at four per cent interest and be sold before July 1, 1910, and the coupon due January 1st next would go to the buyer; that the thought of giving away interest was entertained on this assumption.

Par is not a technical term, but one in common use. Webster defines it as "equal value-equality of nominal and actual value." "A term applied to any two things of equal value" is the definition of Zell's Cyclopedia. "Of equal nominal and actual value" is the definition in 'New Century Book of Facts.'" All authorities agree in these definitions. The word par is also used for the value expressed in a certificate of stock or other security. That is the meaning in our code chapter on corporations and in the revenue law as to banks and other corporations.

"For a price not less than par" means a sum of money equal to the value of the bonds when sold, which included interest. Did the legislature know of the mysterious doctrine of apportionment of interest as applied to these bonds? Was it aware that a coupon is of no value until it is due as held below? That, if the bonds had been sold January 1, 1911, the coupons would have been worth the sum named in it, but a sale on December 31, 1910, carried the coupon as a bonus to the buyer of the bond because interest cannot be apportioned said the court, unsupported by any authority in the world.

Par means of equal value—equal to what? The bonds with or without coupons? Were not the coupons part of the bonds? Were they not the inducement to the purchase? Would anybody desire a bond without coupons, unless the body of it stipulated for interest? The plainness of the question involved in this case embarresses the effort to make it plainer.

The language of the law is significant. It is not at par merely, but for a price not less than par plainly meaning their value or worth when sold which might be when several coupons had matured by their terms.

I deny the assertion of the court below that the highest bidder even below par would have been entitled to the bonds. It would have been the duty of the officers to reject all bids below par, otherwise, a sale at seventy-five cents on the dollar would have been valid. Will anybody agree to that?

If the legislature intended the bonds to go at face value with coupons as a bonus, why did it not say so? Face value means without accrued interest, while par means full value.

All testimony as to the meaning and practice of bankers and bond dealers was incompetent and should have been excluded. The legislature did not employ language with reference to their practice. It did not consult them as to the language used and such testimony is both useless and incompetent. The books define words and courts go by them and not the notions of witnesses. Besides, what one banker might think a hundred others might contradict. *Dexter* v. *Phillips,* 121 Mass. 178, relied on as decisive of this case, has no application to it, not even a remote bearing on it. It simply darkened counsel and confused the court. It was a totally different subject. Par and value were not mentioned in it, because it involved a wholly different subject. It was a contest between the residuary legatees of the will of Dexter, who were directed by his will to pay income to Phillips. Dexter owned bonds of various kinds and real estate rented and died when bonds and rents were not due and the only question in the case was, whether these rents and interest were income or capital, and the court, overruling a former decision of the court held on reasoning I do not comprehend, that they were not capital but income. The case would seem to be authority against the

view of the court below in this case because it considered
immature interest and rent as income and that immature
coupons did not go with the bonds, while in this case
immature coupons were considered as nothing and go
with the bonds. I do not think that *Dexter* v. *Phillips*
was ever cited before in any case involving the question
of par or value. It speaks of bonds not due, the court
below of interest not due. Not one of the citations in
the opinion of the court below furnished any support
whatever.

The case in Sm. & M. 507 was a suit on a promissory
note payable "in the notes of the chartered bonds of
Mississippi at par." Held, the notes were to be taken
at par. Of course. Does that throw any light on this
case?

*State* v. *Simmons,* 70 Miss., presents no such question
as is involved in this case. The reference to former
statutes of this state for sale of bonds throws no light
on the Act of 1910, which must be interpreted by its
own terms. These are all independent acts, each deter-
minable by its own provisions.

*Evans* v. *Tillman,* 38 So. Co. 238, claimed to be directly
in point, utterly fails to support the conclusion drawn
from it. The act interpreted by the court not only used
the term "face value," but in several sections used that
expression in the sense of principal without accrued in-
terest, said the court, and besides authorized commis-
sions for placing bonds, on which these judges held the
sale should not be enjoined. Chief Justice McKiver dis-
sented. There were but few days of interest involved
and the commissioners authorized for placing the bonds
were doubtless sufficient to cover the interest involved.

*State National Bank* v. *Board of Commissioners,* 46
So. Rep. 307, lends no countenance to the decision of this
case below. The law gave the board power to sell the
bonds with or without the coupons attached. It adver-
tised them for sale with coupons attached. The bank bid

offering a premium and the court held the sale valid. Of course, the wonder is that there was any dispute about it.

*Yesler* v. *Seattle,* 1 Wash. 309, is inapplicable. There is nothing about par, or face value, or accrued interest. It involved the validity of a change by the municipal authorities of some of the terms of the bonds after a vote by the people in favor of a bond issue. The change was within the terms of the law. There was no selling below par or giving a bonus as in the pending case. The same court in a later case held that payment of a commission on a sale of bonds made it below par. *Hunt* v. *Fawcett,* 8 Wash. 390.

*Commonwealth* v. *Lehigh Ave. Ry. Co.,* 129 Pa. 417, decided that a railroad corporation whose authorized capital was one million dollars, but with only one hundred thousand dollars paid up could not issue bonds beyond fifty thousand dollars, half its capital stock, because of the provision of the Constitution limiting such issues to half of the capital and that the par value of the capital stock meant capital actually paid in. A proper decision but with no bearing on this case.

*Olsom* v. *Tanner,* 117 Wis. 544, gives no support to the decision below. It merely holds that "face value" means the amount named in the certificate. Of course, it could not be made to mean anything else in that case. The case is valuable as showing the well-settled meaning of the expression face value, which emphasizes the inquiry, if the legislature intended to authorize sale of the bonds at face value instead of par, why did it not say so? The case may be claimed to inferentially support the view contended for in this argument.

*Duvall Co.* v. *Knight,* 29 So. Rep. 408, cited by the court below, held that par value means principal and interest accrued on coupons to date of delivery of the bonds, but that case is condemned by the court below because it follows the New York decisions.

The attempt to distinguish the principle of this case from that involved in *Delafield* v. *Illinois,* 26 Wendall 192, and *Ft. Edwards* v. *Fish,* 156 New York 363, is futile. That the first mentioned was decided more than fifty years ago is hardly a fatal objection to its sound reasoning, especially as it was approved and followed in 1898 by the other. The first mentioned was in chancery and is reported in 8 Paige 517, and on appeal was affirmed as reported in 26 Wendell 172. The case of *Ft. Edwards* v. *Fish,* 156 New York 363, contrary to the statement in the opinion of the court below, involved a sale of bonds with coupons just as in this case and interest was held to have accrued thereon. It was directly in point.

In Hogg's Appeal, 22 Pa. St. 479-489, the court said: "Par means the amount really due including interest." This was in reference to past notes of the bank bearing interest. Trustees were authorized to accept past notes at par.

It is thus seen that not a single case supports the ruling below, while many cases are directly contrary to it.

The decisions contrary to the ruling below are:

In *Delafield* v. *Illinois,* 8 Paige 517, and 26 Wendell 192; *Ft. Edwards* v. *Fisher,* 156 N. Y. 363; Hogg's Appeal, 22 Pa. St. 479, 489; *Duvall Co.* v. *Knight,* 29 So. Rep. 408; *People* v. *Miller,* 82 N. Y. Sup. 621, 622, and 84 App., Division 168, par value was held to include interest to date of sale. *Hunt* v. *Fawcett,* 8 Wash. 306, holding that payment of commissions on sale of bonds made sale below par.

Not a case has been found to sustain the ruling below:

The reason cases deciding the question here involved are so few is because of the general understanding and acceptance of the view contended for in this argument proved by the fact that no case holds a contrary view. The cases establish the doctrine that any sale by which the issuance of bonds receives less than their full value or worth is a sale at less than par.

In *Appeal of Whelen,* 108 Pa. St. 162, 183, it was held that allowance of one per cent commissions to the purchaser of bonds was a sale below par although the law provided for commissions for selling.

*Jas. R. McDowell,* assistant attorney-general, for appellee.

In deciding this case, the court should bear in mind, and will bear in mind, no doubt, its effects. If there is any reasonable interpretation by which the word par would be construed to mean face value, as used by the legislature and as interpreted by the three commissioners charged with the sale of the bonds, one of whom has since the same changed his views, then, the court should give the benefit of any doubt to this construction. In other words, if the authorities are conflicting and the court might go either way, it should resolve all doubt in favor of the validity of the sale. There is no question of bad faith here as regards the sale. The point was not raised; no opposition to the sale was made. It was done by unanimous consent upon an interpretation of the law which certainly seemed reasonable and seemed to carry out the legislative purpose, and certainly was the one interpretation which could be given the law which would make it effective in selling the bonds, the thing the legislature had in mind.

The honor of the state is at stake. Already objection has been made in the New York Exchange to the list of Mississippi securities because of her refusal to pay these very interest coupons. Let not Mississippi be the only state whose credit is not good abroad, and let not Mississippians who come to the relief of their state when she needed the money be disappointed in their state. No one will contend that if the sale was clearly illegal, the state is bound by it to pay the interest; but if there is doubt, then certainly the doubt should be resolved in

favor of the validity of the sale for the protection of the good name and honor of our state.

The bulk of authority seems to be with the opinion of the learned trial judge. Counsel seeks to brush aside with a wave of his hand the decisions cited in the opinion of the court, and simply states as a matter of fact that the law is the other way. In my judgment, the trial judge decided the case correctly, and his decision should be affirmed.

*Geo. Butler* and *F. M. West,* for appellee.

We shall devote a small part of this brief to the meaning of the word "par." 29 Cyc., p. 1556, defines the word "par," thus: "Equal, q. v. Applied to commercial paper, without discount or premium. Applied to currency, equal to gold. Applied to stock, the term has been construed to mean an amount equal to the amount subscribed for the same."

We would call the court's attention to the second definition just given, viz.: "Applied to commercial paper, without discount, or premium." In the note to the text it will be found that the authority cites the case of *Smith* v. *Elder,* 7 S. & M. 507 (Miss.), as authority for the definition just given, and, adopts that case as authority for the definition.

It appears, therefore, that the supreme court of this state has already defined the word in accordance with the views maintained by the appellees here, which is, that "par" merely means without discount or premium.

If the word means that, then it can mean nothing more nor less than "nominal" or "face value."

This court in the recent case of *Lampton* v. *Edwards,* gave a commercial meaning to the coupons attached to the bonds in this controversy, and held that the same were subject to commercial law and usage; and, since such holding, the definition just given, viz., "without discount or premium" as "applied to commercial paper," is im-

portant and significant.   21 Am. & Eng. Law (2 Ed.), p.
1029, defines the word "par" thus:   "Equal.   The word
is used to denote a state of equality or equal value.   Bills
of exchange, stocks, and the like, are at par when they
sell for their nominal value; above par, or below par,
when they sell for more or less."

The words "par value" have been defined as follows:
"The words par value of the capital stock, used in an
act incorporating a railroad company and empowering
a borrowing of money not exceeding in amount one half
of the par value of the capital stock, were construed to
mean capital stock paid up, and not authorized capital."
*Com.* v. *Lehigh Ave. R. Co.*, 129 Pa. St. 405.

Elliott on Railroads, vol. 1, section 109, p. 178, says:
"A subscription to the capital stock of a corporation
amounts to an agreement to take the stock at its par
value, and where a landowner agrees to take the stock
of a railroad company in payment of damages to his
land caused by the construction of the road, he cannot
demand the stock at its market value."   (See notes.)

It cannot be gainsaid that if the market value of cor-
porate shares is one hundred and forty upon nominal
shares of one hundred that the market value is above
par.   It is also manifest that if the market value of stock
is seventy-five upon a nominal share of one hundred
that such value is below par.

The same authority, section 110, p. 181, says:   "The
doctrine which we have been considering would seem to
prevent a corporation, at least as against creditors, from
issuing paid-up stock and releasing the subscriber upon
payment in money of less than its par value; but where
all the other stockholders consent, and it is not forbidden
by the charter or statute, such a transaction is binding
upon the company, and it cannot collect the difference
between the amount paid and the face value of the stock
for its own benefit.   And in a recent case, the Supreme
Court of the United States went still further and held

that an active corporation might issue stock and sell it upon the market for far less than its par value, in order to obtain money to prosecute its business, and pay its debts, and that creditors could not compel the purchaser to pay its face value.'' See *Handley* v. *Stutz*, 139 U. S 417, 35 L. Ed., p. 227, and notes.

It appears, therefore, that the words ''par'' and ''par value'' are synonymous.

*V. J. Stricker*, for appellees.

Mr. Endlich says, in his ''Interpretation of Statutes,'' section 35, ''It is an elementary rule that construction must be made of all the parts together, and not of one part only by itself. A survey of the entire statute is almost always indispensable, even where the words are the plainest, for the true meaning of every passage is that which harmonizes with the subject, and with every other passage of the act.''

When this test is applied to the bond issue act in question it is hardly possible to escape the one result. For if we consider the conditions which necessitated the issuance of the bonds, and the conditions which determined their marketable character after they were issued we are driven to the opinion that the word ''par,'' as used, was intended to refer only to the bonds themselves (not to the coupons) and only to that value which could be immediately ascertained by an examination of their face.

A comprehensive reading of the whole act, affording an interpretation logical in proportion to the effort at cognition, with a survey sufficiently extensive to include all the circumstances under which the bonds were issued, leads to the conclusion that the legislators contemplated a limit of price for which they could be sold, such limit to be, with readiness and certainty, at all times ascertainable by a mere glance at the bonds themselves.

The legislative mind is but the average of the mind of its constituency and it expresses itself ordinarily in

that language which is universally spontaneous in the simple empirical departments of the popular knowledge; and this for the reason, first, that it is but natural for them to do so, in the absence of studied efforts at abstractions and, second, they are influenced in their habits of thought by those conditions which are at all times the general measure of society in its composite feature, the ideas and sentiments of the whole, as well as of each part, finding convenient and agreeable thought conveyances in such words as are developed along with the common process, and immediately referable thereto, as indicating the feelings, intentions and experiences of the common mind.

Therefore the word "par" was used as meaning "equal," being a common vehicle of a notion to make one thing equal to another.

What thing or things, therefore, were intended for equality is the sole question with which we are to deal.

In this case the word "par" in the act is used in connection with the things, bonds. And with reference solely to bonds, which are the very text and objects of the act.

Coupons are no where included as parts thereof. They are in fact specifically excluded, and intended as mere representatives of the interests which the bonds are to bear from the date of their issuance.

("And the dates of their issuance, when applied to notes, bonds, etc., of a series, usually means the arbitrary date fixed as the beginning of the term for which they are to run, without reference to the precise time when convenience or the state of the market may permit of their sale or delivery.") *Yesler* v. *City of Seattle,* 25 Pac. 1014; 1 Wash. St. Reports 308; *Gage* v. *McCord* (Ariz.), 51 Pac. 977-79.

Argued orally by *J. A. P. Campbell* and *C. D. Potter,* for appellant, and *George Butler* and *J. R. McDowell,* assistant attorney-general, for appellee.

SMITH, J., delivered the opinion of the court.

The validity of the bonds here under consideration is not challenged, their validity being conceded by all parties. The contention is that the bondholders are not entitled to the interest on the bonds which had accrued at the time of their purchase. Two questions are submitted to us for decision: (1) Is a district attorney authorized to institute this suit? (2) What is the meaning of the word "par," as used in the "act authorizing the issuance of the bonds for the purpose of defraying the expenses of the government of the state of Mississippi," approved April 14, 1910? Should the first question be answered in the negative, it would be our duty to reverse the judgment of the court below, and to decline to answer the second question, for the reason we would then be without jurisdiction so to do. We are not in accord as to what the answer to this question should be, and since, even should we answer it in the affirmative, our response to the second would necessarily result in a reversal of the judgment of the court below, we have determined to pretermit any discussion of, and to express no opinion upon, the first question.

The word "par" is taken from the Latin, without change of form, and means "equal," "equality." In commercial and financial parlance, it is used to denote "a state of equality or equal value; an equality of actual with nominal value." It is universally held, so far as the research of counsel, supplemented by our own, has enabled us to ascertain, that the equal, or par, or par value of an interest-bearing bond, on the date of its issuance, is a value equal to the principal thereof; on any day subsequent to its issuance, it is a value equal to the principal plus accrued interest, or, to be more accurate, plus the then value of the accrued interest. The nominal value of such a bond necessarily increases with each passing day by the amount of the accrued interest, which, on its face, it promises to pay.

In *State of Illinois* v. *Delafield,* 8 Paige (N. Y.), 527;
*Delafield* v. *State of Illinois,* 26 Wend. (N. Y.) 192, and
Id., 2 Hill (N. Y.) 159, it was held "that, where the legis-
lature of a state authorized its officers to borrow mon-
eys for the use of the state and to sell its bonds for that
purpose, but not for less than their par value, a sale
of bonds which were to draw interest from the time
of sale, but which were to be paid for in future in-
stallments only and without interest, was a sale of such
bonds for less than their par value, and that they were
not binding upon the state, because its agents had ex-
ceeded their authority."   When the matter was before
the chancellor, he said: "If the officers could issue bonds
which would draw interest immediately, and still be al-
lowed to give the purchaser of such bonds the use of the
money loaned for ten months, without interest, they could
with the same propriety, so far as the statutory prohibi-
tion was concerned, have sold the bonds upon a contract
that they should be delivered and draw interest immedi-
ately and that the purchaser might advance the nominal
amount of the bonds in installments of from one to five
years, as the same might be wanted by the complainant
to carry on her public works. . . . The very idea of
a sale of a bond, or draft, or other security for the pay-
ment of money, at par, is that it is to be sold dollar
for dollar of the amount due and payable thereon. . . .
Such is the popular or generally received meaning of the
terms 'par' or 'par value,' and this was unquestionably
the sense in which these terms were used by the legisla-
ture of Illinois, in the statute under which the officers
of the state were authorized to issue these bonds."   When
the case reached the court of errors, Judge Bronson said
that "if par value does not mean in this case a dollar in
money for every dollar of security, the wit of man can-
not tell us what it does mean."   Senator Verplank, re-
ferring to the same subject, said: "If the payment be
now made to the state in New York funds, the 'par' value

would, in the common language of the stock market, as well as the natural interpretation of the phrase, independent of usage, be the amount due on the face of the certificate. But the actual sale is made on terms which on the three hundred thousand dollars sale gave the appellant an advantage of one hundred and three days' interest, and on the two hundred and eighty-three thousand dollars sale of above ten months. I cannot, upon any understanding of the words, consider this a sale at par value, any more than if there had been an undisguised discount at the same rate." *Village of Ft. Edwards* v. *Fish,* 156 N. Y. 363, 50 N. E. 973. The only difference between that case and the one at bar is that there the bonds were sold, but not paid for until several months' interest had accrued thereon, while here several months' interest had accrued on the bonds at the time they were purchased. The principle governing the two cases must therefore be the same. In *Village of Ft. Edwards* v. *Fish, supra,* it was held that "when village water bonds draw interest from their date, and are deposed of by by the commissioners after their date, with accrued interest attached, their face or par value, within the meaning of the statute, is the sum of the principal and the accrued interest." To the same effect, see *Duvall* v. *Knight;* 42 Fla. 366, 29 South. 408; Hogg's Appeal, 22 Pa. 479, and *Bank* v. *Greenburgh,* 173 N. Y. 215, 65 N. E. 978.

The only other case dealing with the par value of interest-bearing bonds, which has come under our observation, is the case of *Evans* v. *Tillman,* 38 S. C. 238, 17 S. E. 49. This case is not in point here, for the reason that the court pretermitted any discussion of the meaning of the words "par value," as used in the financial and commercial world, and rested its decision upon a ground peculiar to the statute under consideration by it, and which has no bearing on the case at bar. In *Smith* v. *Elder,* 7 Smedes & M. 507, it was held that the word "par" means

"without discount or premium." If the money received for these bonds had been less than the principal thereof, they would, of course, have been sold at a discount, or less than par. This would have been true, even if the full amount of the principal had been paid, and a part thereof afterwards returned to the purchasers. If these coupons are to be collected in full, that is just what will occur here; for in that event the state will pay to the purchasers a sum of money not earned as interest, and which could only represent a refund on the price paid for the bonds. In *Hunt* v. *Fawcett,* 8 Wash. 396, 36 Pac. 318, the court held that "to sell the bonds at their face value, and at the same time pay a large commission to the purchaser, is not to sell at par." The cases of *Dexter* v. *Phillips,* 121 Mass. 178, 23 Am. Rep. 261; *State National Bank* v. *Board of Commissioners,* 121 La. 269, 46 South. 307; *Yesler* v. *City of Seattle,* 1 Wash. 309, 25 Pac. 1014; *Commonwealth* v. *Lehigh Ave. R. R. Co.,* 129 Pa. 417, 18 Atl. 414, 498, 5 L. R. A. 367 and *Newark* v. *Benjamin Elliott et al.,* 5 Ohio St. 113, cited and relied upon in the court below, are not in point.

But it is said that an examination of the statutes passed by the various legislatures, authorizing the issuance of bonds, discloses the fact that the words "par" and "face" value have been used in these statutes as synonomous, that consequently the legislature must have so used the word "par" in the statute now under consideration, and that the face value of an interest-bearing bond is the principal thereof, excluding interest. The rule of construction thus invoked by counsel for appellee is that in a case of doubt and uncertainty the court may, in construing a statute, look to prior statutes in order to ascertain the meaning of the words used in the statute under consideration; but this rule can never be invoked where the words used have a plain and well-settled meaning, or where to do so would not remove, but create, an ambiguity. It is true, also, that where the legislature by

means of a series of statutes running through a number of years has been engaged in building up a general scheme or system, as, for instance, a system of drainage, all of these statutes must be construed together in order to arrive at the legislative intent, and the words of the later statutes will be given the same meaning as was given to them by the legislature in the former statutes; but such is not the case here. It may be that counsel are in error in assuming that the face value of an interest bearing bond is the principal thereof, excluding interest, as to which we are not called upon to express an opinion. It is true that the term is so defined by the lexicographers, and three cases are cited in support of this definition: *Osgood* v. *Bringolf,* 32 Iowa 265; *Olson* v. *Tanner,* 117 Wis. 544, 94 N. W. 305, and *Marriner* v. *Roper Co.,* 112 N. C. 164, 16 S. E. 906.

In the first of these cases it does not appear whether the instrument, in that case a judgment, bore interest on its face or not; so that the decision is consequently of no value here. In the second case the instrument under consideration did not on its face bear interest, and this fact was made the ground of the court's decision. In discussing this matter the court, among other things, said (italics ours): "There is nothing ambiguous about the words 'face value' as applied to such a paper; therefore it would be useless to spend time discussing what they might be held to mean in the light of rules for judicial construction. Being used clearly in their plain, ordinary sense, there is no room for construction. It is considered here that the common meaning thereof in the relation under discussion is the amount named in the paper, not including interest or anything determinable by computation of evidence aliunde *especially where the right to interest does not appear upon the face of the paper.* It will be observed that the subject of interest is not even alluded to on the face of the certificates. That presents the clearest kind of a case for confining the term

'face value' to the money value expressed in the language of the paper. . . . Respondents' counsel bring to our notice with much confidence *Delafield* v. *Illinois,* 26 Wend. (N. Y.) 192; Id., 2 Hill (N. Y.) 159; and *Meixell* v. *Kirkpatrick,* 29 Kan. 679. Those cases, however, do not treat of the meaning of 'face' or 'face value' as regards an instrument merely naming a sum of money, as in this case. They deal with *prima facie* value of obligations to pay money, saying, in effect, that the apparent worth thereof is the amount due upon the face of .the instruments, including interest. The obligation before the court in each case, it will be noted, indicated upon its face that the principal sum drew interest. If such adjudications bear at all on the questions here for decision, they are certainly not sufficiently persuasive to cause us to hesitate to apply what appears to be the common, ordinary, and well-recognized meaning of the words under discussion, where used in an instrument containing no reference whatever to the subject of interest." In the last case, *Marriner* v. *Roper Co.,* the instrument under consideration by the court did not bear interest on its face, and the question of interest in fact was not involved. It was simply an order or ticket issued by a corporation to its employees, payable in merchandise.

On the contrary, the only cases dealing with the face value of an interest-bearing instrument are *State* v. *Delafield, Village of Ft. Edwards* v. *Fish,* and *Duvall* v. *Knight, supra*; and in the first of these it was impliedly, and in the other two expressly, held that the face value of such an instrument is the principal plus accrued interest. The promise, on the face of the bonds, is to pay a certain sum plus interest. It follows from the foregoing . views that the bondholders are not entitled to the unearned interest on these bonds.

The judgment of the court below is reversed and the cause dismissed.

## ON SUGGESTION OF ERROR.

The assistant attorney-general again calls our attention to the evidence in this case which he states we "seem to ignore." This testimony was not referred to in our former opinion, for the reason that there is no controversy between the counsel relative thereto, and for the further reason that most of it is wholly immaterial, having no bearing on the legal questions involved. This evidence discloses that pursuant to section 2 of chapter 99 of the acts of 1910 the bonds were offered for sale to the public by means of advertisements in the newspapers, and that no bids were received therefor; that thereupon the governor with considerable difficulty succeeded in selling the bonds at private sale to various parties and at various times, the last sale being made on the 29th day of December, 1910, all sales being made "with the advice and consent of the treasurer and auditor." The bonds were dated on and bear interest from July 1, 1910. All parties being under the mistaken impression that the "par" of an interest-bearing bond is the principal thereof, excluding accrued interest, no account was taken of this interest in the sale of the bonds; but all of them were sold for the amount of the principal thereof, which was the highest price that could be obtained for them. This evidence simply shows that the bonds were sold in good faith under the mistaken belief that the law was being complied with. The question before us, however, is not the good faith of the parties, but whether the law under which the bonds were sold was in fact complied with.

It does not appear when the contract for lithographing the bonds was made, except that it was shortly after the 6th day of June, 1910. They were not delivered by the party with whom this contract was made until the 13th day of September following. Some of the purchasers agreed to take part of the bonds prior to the

13th day of September; but they were not delivered, and the money to be paid therefor was not paid into the treasury, until after that date. These facts can have no bearing upon the right of the purchasers to collect the unearned interest. The sale of the bonds did not in fact take place until they were delivered and the money paid into the treasury.

Again, it is said that the general manager of the Merchants' Bank & Trust Company of Jackson, Mississippi, testified without contradiction that the par value of an interest-bearing bond is the principal thereof, excluding accrued interest, except where such interest is represented by a coupon which has matured, matured coupons being included in ascertaining the par value of the bond; that this was the definition of the term acted upon by the business world generally, and by his bank particularly, in all transactions involving the par value of such instruments. This evidence was really incompetent and is wholly immaterial, for the reason that the words "par" and "par value," as applied to commercial paper, have a well-settled meaning in commercial law, as shown in our original opinion, and consequently are not subjects of expert testimony.

The suggestion of error is overruled.    *Overruled.*