ALEX CURRIE, et. al., Respondents, v. LYNN J. FRAZIER, et al., Appellants.

(186 N. W. 244.)

**States — officers held not authorized to sell bonds at a discount, or pay commissions reducing amount received to less than par.**
1. Where a statute authorizes officers of the state to sell certain bonds at not less than par and for cash, they may not contract to sell the bonds at a discount or to pay a commission to the purchaser which will reduce the amount received for the bonds to less than par.

**States — evidence held not to show that bank purchased bonds, but that it held them as custodian.**
2. The evidence showing the capacity in which the Bank of North Dakota held and attempted to dispose of the bonds, the sale of which is in question, is examined and it is held that the bank did not become a purchaser of the bonds from the Industrial Commission, but that it held them as custodian for safe keeping.

Appeal from District Court of Burleigh County, *Cole*, Special, J.

Affirmed.

*Wm. Lemke*, Attorney General, for appellants.

The Bank of North Dakota is authorized to purchase bonds of the State of North Dakota. Chap. 148, Laws of 1919, § 4; chap. 153, Laws of 1919, § 7; chap. 154, Laws of 1919, § 6; chap. 24, Laws Special Session, 1919, § 5.

The Bank of North Dakota, as an agency of the sovereign power, has a distinct status separate and apart from that of the state itself. Its contracts are not the direct contracts of the state. Sargent County v. State, doing business as the Bank of North Dakota, 47 N. D. 561, 182 N. W. 270, 275; chap. 147, Laws of 1919.

A state agency may pay commission. Church v. Hadley, 240 Mo. 680, 145 S. W. 8, 39 L. R. A. (N. S.) 248; Miller v. Park City, 126 Tenn. 427, 150 S. W. 90, Ann. Cas. 1913 E. 83; State v. West Duluth Land Co. 75 Minn., 456, 78 N. W. 115.

*J. J. Kehoe* and *A. E. Wheeler*, for respondents.

The par value of a bond at any given time is the principal and interest then due on it. Accordingly the accrued interest on a bond at the time of

its sale must be included in the purchase price, or the bond will be sold at less than par. Foot note to Miller v. Park City, 30 A. & E. Ann. Cases. 85, and the cases therein cited; State v. Delafield, 8 Paiges Ch. 523, appearing in 4 N. Y. Ch. Rep. 529; State v. Delafield, 26 Wendell (N. Y.) 192, appearing in 32 N. Y. Common Law Repts. 192; State v. Delafield, 2 Hill (N. Y.) 159, appearing in 33 N. Y. Common Law Reports, 159; 135 L. R. A. N. S. 789.

BIRDZELL, J.   This is an action to enjoin the defendants from carrying out the provisions of a certain purported contract for the sale of bonds of the state of North Dakota.   From a judgment entered in the district court of Burleigh county, enjoining the defendants from delivering any further bonds under the contract and from selling any bonds of the state at less than par and except for cash, the defendants have appealed.   All of the facts necessary to a decision of the questions presented on appeal are stipulated, and are, in substance, as follows:

The agreement arrived at is evidenced by certain letters.   The first and principal one, dated September 21, 1921, to Spitzer, Rorick & Co., of Toledo, Ohio, reads:

"September 21, 1921.

"Spitzer, Rorick & Co., Toledo, Ohio—Dear Sirs: We hereby sell you the following bonds of the state of North Dakota real estate series: $140,000 due in 1941, without prior option; $525,000 due in 1946, without prior option; $715,000 due in 1948, without prior option; $3,900,000 due at date mutually agreed upon.

"The bonds due in 1941 are in denominations of $500 each, and the balance are in denominations of $1,000 each and are to be made payable, by indorsement thereon of an undertaking in which the Bank of North Dakato agrees to pay said bonds, both principal and interest, at the Empire Trust Company in the city of New York and state of New York. These bonds are the direct and general obligation of the state, and they are also secured by the deposit with the state treasurer of a like amount of real estate first mortgages on farms in North Dakota. All of said bonds bear interest at 5¾ per centum per annum, payable semiannually, both principal and interest payable in gold coin of the present standard of weight and fineness, and are to be unqualifiedly approved by Mr. Chas. B. Wood of Chicago as the direct and general obligation of the state and as to the security and sufficiency of the taxing power back of these bonds to pay them.

"Said bonds are to be delivered to you in New York or Toledo, at your option, as follows: $500,000 on September 26, 1921; $500,000 on October 26, 1921; $500,000 on November 26, 1921; and $300,000 on the 26th day of each month thereafter up to and including August 26, 1922, and the remainder on September 10, 1922, but you have the right to take up all or any part of said bonds earlier than the dates specified.

"We will make arrangements with the Spitzer, Rorick Trust & Savings Bank of Toledo to act as our fiscal agent to deliver these bonds to your firm from time to time according to the terms of this agreement.

"The purchase price of the foregoing bonds to be par and accrued interest.

"The state of North Dakota has authorized an issue of $1,000,000 of 6 per centum bonds, mill and elevator series, dated July 1, 1921, due one-half on July 1, 1941, and one-half on July 1, 1946, denominations of $1,000 of which are unsold approximately $590,000. We have made arrangements to secure these bonds and in consideration of the above purchase, you are given an exclusive option on the said $590,000 bonds at par and accrued interest, said option to expire on December 26, 1921, unless exercised by you.

"The state of North Dakota contemplates the issuance during the year of 1922 not exceeding $1,500,000 additional bonds, mill and elevator series, to bear 5¾ per centum interest per annum, payable semiannually. We have made arrangements to secure these bonds when issued and agree that you are to have the exclusive right to purchase said bonds at par and accrued interest. It is agreed that when said bonds are ready for issuance from time to time that we shall notify you in writing to that effect, and you must exercise your option to purchase at the price within 30 days from the date when you receive written notice from us.

"The state of North Dakota contemplates the issuance during the year 1922 of bonds, home building series, in amounts not exceeding $1,000,000; said bonds are to be in denominations of $1,000 each bearing interest at 5¾ per centum per annum, payable semiannually. We have made arrangements to secure these bonds when issued and agree that you are to have the exclusive option to purchase the same or any part thereof which are issued, at par and accrued interest, at any time within 60 days from the time when you receive a written notice from us that said bonds are ready for delivery.

"The above option given in consideration of your having this day

made an absolute purchase from us of $5,280,000 real estate series bonds.

"It is agreed that Charles B. Wood of Chicago has already approved part of the above-described bonds of the real estate series sold to you and that on the remaining bonds above described, which are all of said bonds of the state of North Dakota that will be authorized or issued for any purpose prior to September 10, 1922, we will furnish you with the unqualified approving opinion of Charles B. Wood, or at your option permit you to secure such opinion at our expense.

"It is further understood and agreed that each of the said bonds optioned herein are to be made payable by indorsement thereon of an undertaking in which the Bank of North Dakota agrees to pay said bonds both principal and interest, at the Empire Trust Company, in the city of New York and state of New York.

"We recognize your need for market protection and as a further consideration hereby agree not to sell or offer to sell directly or indirectly any bonds of the state of North Dakota from this date until September 10, 1922, and in case of litigation or other adverse conditions arising which in your opinion affects the salability of these bonds you are to have the right to cancel all or any part of the uncompleted portion of this contract, after you have taken up and paid for $1,800,000 par value of bonds.

"It is agreed that notice shall not be given you until the bonds are ready for delivery in full compliance with the Constitution and laws of the state, together with Charles B. Wood's approving opinion, and we hereby agree to deliver to you in New York or Toledo at your option, as directed from time to time, any and all of said bonds within 30 days from the date when we receive a written notice from you of your determination to exercise your option or purchase. All of the bonds above mentioned shall mature at specific dates without prior option.

"Respectfully submitted,

"The Bank of North Dakota,
"By F. W. Cathro."

"Sept. 21, 1921.

"We hereby confirm the foregoing purchase and contract in all respects and hereby agree to faithfully carry out the same.

"Spitzer, Rorick & Co.,
"By A. V. Foster."

Additional letters, dated the same as the above, and which are referred to as "riders" to the contract evidenced by the above letter, are as follows:

"September 21, 1921.

"Spitzer, Rorick & Co., Toledo, Ohio—Dear Sirs: In consideration of the contract of sale this day entered into by us, wherein we sell you bonds of North Dakota real estate series, and option to you bonds of North Dakota, mill and elevator series and home building series, noted in said contract, we hereby agree to pay you at the time of each consignment of said bonds is taken up and paid for by you, including these on which you may exercise your option three points (three per cent. on par) on bonds real estate series sold in said contract, amounting to approximately five million two hundred eighty thousand dollars ($5,280,-000) and two points (two per cent. on par) on all bonds optioned in said contract except the six per cent. mill and elevator series, amounting to approximately five hundred ninety thousand dollars ($590,000).

"This agreement is attached to and made a part of the original contract referred to herein between the parties hereto.

.          "Bank of North Dakota,
              "By F. W. Cathro, Manager."

"September 21, 1921.

"We hereby confirm the foregoing agreement in all respects and hereby faithfully agree to carry out the same.

              "Spitzer, Rorick & Co.,
                  "By A. V. Foster."

"September 21, 1921.

"Spitzer, Rorick & Company, Toledo, Ohio—Dear Sirs: In consideration of the contract of sale this day entered into by us, wherein we sell and option to you the bonds of North Dakota noted in said contract, we hereby agree to pay you at the time each consignment of bonds is taken up and paid for by you, including those on which you may exercise your option, two points (two per cent. on par) on all bonds delivered to you during the life of said contract, said two points to be in addition to the payments specified in that certain rider contract which, together with this agreement, is attached to and made a part and a portion of

the original contract for the sale and option of the bonds of North Dakota as referred to herein.

"Bank of North Dakota,
"By F. W. Cathro, Manager."

"September 21, 1921.

"We hereby confirm the foregoing agreement in all respects and hereby faithfully agree to carry out the same.

"Spitzer, Rorick & Company,
"By A. V. Foster."

Under the above contract, $1,486,500 of North Dakota bonds, real estate series, were sold and delivered to Spitzer, Rorick & Co. between September 26, 1921, and November 5, 1921, for which the latter paid $1,486,500. On November 2d and 8th, the Bank of North Dakota paid to the Industrial Commission the amount paid to the Bank by Spitzer, Rorick & Co. on account of the bonds sold, less $25,000. It also paid to the commission $491,000, which it had received through the sale of other bonds of the real estate series to other purchasers.

As the bonds of the real estate series were delivered from time to time by the state treasurer, they were placed in the Bank of North Dakota for safe-keeping, and their receipt for this purpose by the bank was specifically acknowledged. As evidence of the capacity in which the bank held and disposed of the bonds, on November 2d, by its manager and director general, it advised the Industrial Commission that it (the commission) had, prior thereto, delivered to the bank as "custodian and for safe-keeping" bonds of the real estate series aggregating $2,000,000; that under the direction of the Industrial Commission and at its expense, the bank had conducted a campaign for the sale of the bonds, resulting in the sale of $1,712,800. Cashier's check was inclosed for this amount to cover all of the bonds so sold. This check was indorsed back to the bank by the Industrial Commission and paid. On November 8th the bank further advised the Industrial Commission that it had sold additional bonds of the same series amounting to $239,100, under the same circumstances as indicated in the previous letter of November 2d. Cashier's check was inclosed for this amount, which was paid in the same manner. Certain bonds of the mill and elevator series were likewise delivered to the Industrial Commission, and in turn receipted for

by the bank for safe-keeping. On the real estate bonds thus sold to Spitzer, Rorick & Co. the bank advanced in commissions, $74,325, or 5 per cent. upon the total of such bonds sold to Spitzer, Rorick & Co.

The principal contentions advanced by the plaintiffs and respondents in support of the claim that the contract in question is illegal are: First, that the legislative acts authorizing the issuance of the bonds embraced in the contract required their sale at not less than par and for cash (chap. 153, § 7, and chap. 154, § 6, Session Laws of 1919) ; second, that the limitation of sale for cash and at not less than par qualifies the authority of the Industrial Commission, and that hence, the commission, being the directors of the bank, cannot evade the limitations by first having the bank invest its funds in the bonds and then making a resale to third parties; third, that the record fails to show a sale to the bank; but, on the other hand, shows affirmatively that the bank did not buy the bonds from the Industrial Commission, and as a consequence that their attempted disposition under this contract is an attempt by the Industrial Commission to sell the bonds for less than par; fourth, that the contract is not binding because not executed in the manner required by § 21 of the Bank Act (Laws 1919, chap. 147), which says:

"Written instruments shall be executed in the name of the state of North Dakota, signed by any two members of the Industrial Commission, of whom the Governor shall be one, or by the manager of the Bank of North Dakota within the scope of his authority so to do as defined by the Industrial Commission."

The stipulated facts, in our opinion, show beyond a doubt that the bank never became the purchaser of the bonds which it attempted to sell to Spitzer, Rorick & Co. It had them merely for safe-keeping, as its own receipts indicated. It was not carrying the bonds as assets. As it sold them, it remitted the proceeds to the Industrial Commission. In its letters of advice it expressly acknowledged that it had held the bonds merely for safe-keeping, and that the sale had resulted partly through the activities of the bank incurring expenses under the direction of the Industrial Commission, which expenses were charged to the appropriation of the commission. The bank never at any time pretended to be the owner of the bonds. The attempted sale therefore must be considered as having been made by the Industrial Commission. In view of the facts, it is not necessary to consider whether or not the bank, under the

direction of the Industrial Commission, could in fact purchase at par and resell at a discount.

Can the Industrial Commission sell at a discount to the purchaser, bonds which the statute requires to be sold at par and for cash? We are clearly of the opinion that it cannot. The Attorney General argues that if the sale by the bank is in reality a sale by the Industrial Commission, as we hold it to be, payment of expenses and such commissions as were paid and contracted to be paid to Spitzer, Rorick & Co. is not in contravention of the statute prohibiting the sale at less than par. We have examined all of the authorities cited in this connection, and find that, while they support the payment of a reasonable commission to an agent or broker, where one is employed, they do not countenance the allowance of a commission to a purchaser. To do so in a case where the commission must be subtracted from the par value would result in a sale at less than par—the thing the statute prohibits. This is not an instance where the state has attempted to employ Spitzer, Rorick & Co. as an agent or broker to sell its bonds and to pay them a commission for their services But Spitzer, Rorick & Co. purport to be the purchasers. None of the authorities relied upon by the Attorney General goes so far as to support a discount to the purchaser under the guise of a commission. On the contrary, they declare that a purchaser may not thus secure the bonds at less than par. See Appeal of Whelen et al., 108 Pa. 162, 1 Atl. 88; Hunt v. Fawcett, 8 Wash. 396, 36 Pac. 318; Miller et al. v. Park City et al., 126 Tenn. 427, 150 S. W. 90, Ann. Cas. 1913E, 83; Smith v. State ex rel. McNeil, 99 Miss. 859, 56 So. 179, 35 L. R. A. (N. S.) 789, and note; Church v. Hadley, 240 Mo. 680, 145 S. W. 8, 39 L. R. A. (N. S.) 248; Armstrong v. Village of Fort Edward, 159 N. Y. 315, 53 N. E. 1116; Davis v. City of San Antonio et al. (Tex. Civ. App.) 160 S. W. 1161; State v. West Duluth Land Co., 75 Minn. 456, 78 N. W. 115.

Since this cause was submitted there has been a change in the personnel of the Industrial Commission, and there have been statements in the press to the effect that one or more contracts have been entered into involving the sale of the bonds covered by the contract in question. This court is not advised of the terms of any such contract or contracts. The only reference thereto in the record in this case is that made in the motion of the present Attorney General on December 16th, in which he moves that the case be remanded to the trial court "for the reason that a new contract has been entered into involving the subject-matter of this

appeal." Counsel for the respondent does not consent to the granting of the motion to remand, and the facts with reference to any new contract or contracts that might exist are not a matter of record herein. The present Attorney General has specifically refused to move for a dismissal of the appeal, and asks that the case be either remanded or determined on its merits. In view of our opinion on the merits a remand could serve no useful purpose. The motion to remand, however, does not indicate that the cause is moot. Unless this court is disposed to prosecute an inquiry upon its own initiative to determine whether the case is in fact moot, it seems that there is no option other than to determine the merits of the appeal.

For the foregoing reasons the motion for substitution is granted, and the judgment is affirmed.

CHRISTIANSON and ROBINSON, JJ., concur.

BRONSON, J. (specially concurring). I express no opinion upon the merits. The trial court enjoined the defendants, as members of the Industrial Commission, from selling or delivering bonds of the state pursuant to the contract made with Spitzer, Rorick & Co. The defendants, while members of the Industrial Commission, appealed. Since that time, pursuant to the recall election held October 28, 1921, such defendants have ceased to be members of the Industrial Commission. On December 16, 1921, the Attorney General, Hon. Sveinbjorn Johnson, appeared before this court, and made the following motion:

"I move that the names of R. A. Nestos, as Governor of the state of North Dakota, Joseph A. Kitchen as Commissioner of Agriculture and Labor, and Sveinbjorn Johnson, as Attorney General, be substituted for Lynn J. Frazier, John N. Hagan, and William Lemke, as Governor, Commissioner of Agriculture and Labor, and Attorney General, respectively, constituting the former Industrial Commission.

"I further move that the case be remanded to the trial court upon the suggestion of the Attorney General for the reason that a new contract has been entered into involving the subject-matter of this appeal for further action by the trial court."

It is apparent that the motion of the Attorney General to substitute, as parties defendant, the present Industrial Commission must be granted.

This court has so ordered. Any injunction, to be of any force, necessarily must be against the new Industrial Commission. Upon the motion made by the new Attorney General it is further apparent that a new contract has been made, involving the subject-matter of this appeal, namely, a new contract superseding the old contract. The cause, therefore, from the viewpoint of the Attorney General, representing the present defendants, the appellants in this action, and, as it now appears to this court therefrom, is moot. The respondent, though given notice, has filed no objections to the motion or showing of the Attorney General. The appeal therefore should be simply dismissed. Tubbs v. Sather, 29 N. D. 84, 149 N. W. 567; Thompson v. Vold, 38 N. D. 569, 165 N. W. 1076. See note Ann. Cas. 1912C, 247. This will be in effect an affirmance of the judgment. Stimson v. Stimson, 30 N. D. 78, 83, 152 N. W 132. This will operate accordingly to permit the judgment entered by the trial court to stand as such, and will not serve in any manner to embarrass the new Industrial Commission, concerning the new contract, or by any determination upon the merits with such new Industrial Commission as defendants.

GRACE, C. J., concurs.