STATE OF MISSISSIPPI EX REL. JOE T. PATTERSON, ATTORNEY
GENERAL, FOR THE USE AND BENEFIT OF THE SCHOOLS
IN TOWNSHIP 2 NORTH, RANGE 11 EAST, OF JASPER COUNTY,
MISSISSIPPI *v.* SIMS, et al.

No. 43568          June 7, 1965          176 So. 2d 261

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellant.

*McFarland & McFarland,* Bay Springs; *Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellees.

PATTERSON, J.

This suit arises from an oil lease executed by the Board of Supervisors of Jasper County to one L. F. Wall to Section 16, Township 2 North, Range 11 East for the bonus sum of $5,139.52. This sixteenth section lies within beat 1 of Jasper county which was then served by S. C. Sims as a member of the board of supervisors. He and the surety on his bond are designated as defendants to the suit.

The bill of complaint alleges that the true bonus paid for the lease was the sum of $19,273.20. This suit was to recover the difference between $19,273.20, which was alleged to have been paid, less certain geological and brokerage fees, and the $5,139.52 paid to the county, such sum being $9,230.00.

The record reveals the following facts in regard to the lease transaction: On December 8, 1958, L. F. Wall and Mac Wilkerson appeared before the Board of Supervisors of Jasper County and offered to purchase an oil, gas and mineral lease to a one-half interest in the land above-mentioned for a bonus consideration of $10.00 per acre. The board declined the offer to lease a part of the section, but indicated it would consider an offer on the entire section. The offerers stated they would consider leasing the entire section, whereupon the board adjourned until December 16, 1958, at which time Wall and Wilkerson appeared before them and submitted an offer on the entire section. This offer was for a bonus consideration of $8.00 per acre or a total of $5,139.52. This application was approved by the board, as well as the superintendent of education, whereupon a draft was offered in payment of the bonus. This method of pay-

ment was declined by the board on the advice of its attorney. Wall and Wilkerson were advised that payment for the lease would have to be made by a cashier's check or cash. The applicants for the lease were not able to meet these terms and the matter was continued until the January 1959 meeting of the board. At this meeting an order was entered authorizing and directing the sale of such lease in the following terms:

That said offer is the highest and best offer received for said oil, gas and mineral lease and represents the true, reasonable present market value of such lease.

The Board further finds that it would be to the best interest of the county to accept such offer and lease said property unto the applicant, L. F. Wall.

The record reflects that Wall was financially unable to close the transaction himself and that in order to do so it became necessary that the lease be delivered to him in Jackson, Mississippi, so that he could, with the lease, obtain funds to consummate the purchase. Under these circumstances the board of supervisors requested Sims to deliver the lease to the applicants in Jackson upon receipt of the funds authorized in their order.

In the meantime Wall became ill and requested Max Cox of Dallas, Texas, a lifelong friend of his, to aid in closing this transaction, whereupon Cox met Wall in Jackson and obtained from Wall his personal checks as follows: A check in the amount of $5,139.52 payable to Jasper County, this being the amount agreed upon by the board for the sale of the lease; a check in the sum of $1,605.00 to Max Cox for geological services; and a check in the sum of $1,605.00 to Mac Wilkerson as a commission or brokerage fee; and a check to cash in the sum of $9,300.00. On January 7, 1959, Cox met Wilkerson and Sims in the King Edward Hotel in Jackson, but they were unable to complete the transaction since Sims did not have with him a copy of the minutes of the board

of supervisors or some similar requirement of the Skelly Oil Company to whom Wall had assigned the anticipated lease, whereupon they agreed to meet the following day at the same place.

At the subsequent meeting Cox, Wilkerson and Sims met as planned and went to Cox's room where Sims delivered the lease to Cox who in turn took it to the offices of Skelly Oil Company where he obtained a draft from such company in the sum of $19,273.20. He then went to the Deposit Guaranty Bank and deposited this draft to Walls's account. He obtained a cashier's check in the sum of $5,139.52 in favor of the Superintendent of Education of Jasper County and $9,300.00 in cash and returned to the hotel room. He delivered to Sims the cashier's check in the sum of $5,139.52; he delivered to Wilkerson the check of Wall in the amount of $1,605.00. He then, according to his testimony, counted the cash in the presence of Sims and Wilkerson and handed the same, less $70.00 for revenue stamps and recording fee, to Sims who pocketed the same and left the room. Wilkerson tarried momentarily, according to the testimony of Cox, and displayed to him a receipt for $9,230.00 which Wilkerson told Cox had been obtained from Sims. The receipt was retained by Wilkerson. Sims sharply disputes the testimony of Cox in that he denies the cash transaction in its entirety, and he denies the receipt as having been shown in his presence, and he emphatically denies having signed the receipt. Wilkerson did not testify.

Subsequently Sims delivered to the proper authority the cashier's check in the sum of $5,139.52 and the transaction was considered closed. However, the State Auditing Department called upon Sims to pay the sum of $9,230.00 to the county as being the remainder of the bonus payment. Sims refused to do so, contending that he did not receive this amount or any other amount from the transaction other than the cashier's check

payable to the superintendent of education which he delivered to the payee. Suit was brought by the State to recover the alleged balance due and from an adverse judgment the State appeals to this Court, assigning as error the following:

(1) The chancellor's finding of fact is manifestly wrong being contrary to the facts and the law applicable to the evidence presented.

(2) The chancellor erred in refusing to admit as evidence the receipt offered in evidence reportedly signed by the defendant Sims.

(3) The court erred in admitting over the objection of complainant the indictment returned against the defendant Sims in the Circuit Court of the First Judicial District of Hinds County, Mississippi, and the verdict of the jury in that cause acquitting him.

We are of the opinion and so hold that the first assignment of error is not well taken as there was credible evidence to support the finding of the chancellor. The testimony was in sharp conflict. The chancellor had the opportunity to see and hear the witnesses, to note their actions and demeanor, their sincerity or lack of it, their evasiveness or their forthrightness, and under these circumstances we cannot say that the chancellor was manifestly wrong. *Towles v. Towles,* 243 Miss. 59, 137 So. 2d 182 (1962); *Harris v. Armstrong,* 232 Miss. 192, 98 So. 2d 463 (1957).

We are of the further opinion that the chancellor did not err in refusing to permit the introduction of the receipt which was offered in evidence by the State to connect the defendant with the acceptance of $9,230.00 in cash on January 8, 1959. The defendant emphatically denies the signature thereon as being his. Cox, who testified he saw the receipt momentarily in the hotel room, could not identify the signature as being that of Sims. Wilkerson was not introduced as a witness though he was the person who exhibited the receipt to Cox and

who afterwards retained its possession until it was surrendered to Mr. Pettus of the State Auditing Department, who in turn delivered it to Mr. Barr of the State Auditing Department. Neither of these witnesses could identify the same other than to state that its possession was obtained from Wilkerson. In this situation we are of the opinion that the court below properly refused to admit the receipt in evidence as its execution had not been proved nor its authenticity established. See *Strider v. Calvert Fire Ins. Co.*, 226 Miss. 773, 85 So. 2d 183 (1956) wherein it is stated:

Since the witness had no personal knowledge of the subject matter, he could not testify to the genuineness of the signature of Dodd thereon, or even of the instrument itself. ''At common law, as a preliminary to the introduction in evidence of private writings other than documents coming within the rule admitting 'ancient documents,' so-called, without proof other than that they come from proper custody, their execution must be proved and their authenticity established. A writing standing alone does not of itself constitute evidence; it must be accompanied by competent proof of some sort from which the jury can infer that it is authentic and that it was executed or written by the party by whom it purports to be, unless such facts are admitted by the adversary.'' 20 Am. Jur., Evidence, Sec. 922, pp. 776-7. See also 32 C.J.S., Evidence, Sec. 625, pp. 476-7 as follows: ''In order that a document may be admitted in evidence it is essential that a proper foundation be laid. Generally there should be preliminary proof of the genuineness, authenticity or identity of the document, proof of its execution, and of the verity or correctness of the document, unless such proof is waived, or by rule of law, statutory provision, or admission of the parties such facts are deemed established as to render preliminary proof unnecessary.'' See also Smith v. Natchez Steamboat Company, 1 Howard (2 Miss.), 479; Fairly v.

Fairly, 38 Miss. 280; Memphis Grocery Co. v. Valley Land Co., Ltd., 17 So. 232. (226 Miss. at 777-778.)

We find no reversible error from the appellant's third assignment of error, which relates to the introduction of the indictment and the verdict of the jury in embezzlement proceedings against the defendant, Sims, in Hinds County, Mississippi, which grew out of the same transaction. The case was heard by a chancellor without benefit of a jury, and though the introduction of this evidence would have a more serious implication if heard by a jury as being prejudicial to the State's cause, we are of the opinion that it would not have had prejudicial influence upon the chancellor who by training and skill is educated in the law.

We have carefully considered the record and find no error therein. The cause is therefore affirmed.

Affirmed.

*Lee, C. J., and Rodgers, Jones and Smith, JJ.,* concur.