BRADY, Justice:
This is an appeal by the Mississippi Power Company from a permanent writ of prohibition issued by the Circuit Court of the Second Circuit Court District of Jones County, Mississippi, prohibiting appellant from cutting and keeping clear any and all “danger trees” adjacent to a 125 foot strip of land sought to be acquired as an easement for right-of-way purposes across ap-pellees’ land. The pertinent facts are as follows.
Appellees are the owners of a large tract of land situated a few miles east of Laurel. This land is presently being utilized ,as a tree farm and has a considerable growth of pine trees of various sizes over most of it. Appellant filed the essential condemnation pleadings in order to condemn a right-of-way 125 feet in width across appellees’ land. The application for eminent domain definitely and accurately described the right-of-way sought to be acquired. It also sought the right of reasonable ingress and egress across appellees’ land to and from the right-of-way.
The trial court in issuing its permanent writ of prohibition specifically recognized appellant’s right to proceed with the acquisition of the basic 125 foot right-of-way and further recognized that under our statutes appellant has the general right to condemn “danger trees” located on property adjacent to such right-of-way. In this basic assumption the court was correct. The trial court ruled, however, that under Mississippi Code Annotated section 2751 (1956), the language of the eminent domain application was too vague and ambiguous to adequately advise appellees as to which trees were to be presently condemned *477 and severed as “danger trees” as well as those which might be cut in the future.
Appellant’s application for eminent domain defined “danger trees” as follows:
The term “danger trees” shall mean any and all trees now or hereafter growing beyond the limits of said right-of-way, any part of which would, in falling directly toward the line, strike any structure or any conductor of said line, or come within five (5) feet of any conductor or structure.
The trial court was of the opinion that this language in the application failed to comply with that portion of section 2751, supra, which provides as follows:
When any person or corporation having the right so to do shall desire to exercise the right of eminent domain, he or it shall make application therefor in writing, and the owners of the property sought to be condemned and mortgagees, trustees, or other persons having an interest therein or a lien thereon, shall be made defendants thereto, -which shall state with certainty the right and describe the property sought to be condemned, showing that of each defendant separately. (Emphasis added.)
The basic issue presented for our determination is whether the description in appellant’s application complies with the basic requirements set forth in section 2751, supra, insofar as certainty in the description of “danger trees” is concerned.
There are at least two somewhat conflicting rules with reference to the sufficiency of the description of “danger trees” in applications for eminent domain. Appellant urges strenuously that Alabama has wisely and properly settled this question in Wiggins v. Alabama Power Company, 214 Ala. 160, 107 So. 85 (1926), in which it was held that the application was sufficient if it described the right to remove “danger trees” in the language of the statute. There the court said:
It is not needful to identify each standing tree proposed to be cut, nor the number thereof; neither is it necessary to further define the width of the zone within which the trees may be cut. The * * * limitation to trees which endanger the lines and works located thereon identifies such trees with sufficient certainty. (214 Ala. at 161, 107 So. at 86.)
It should be noted that in the Wiggins case the condemnor in its eminent domain application merely tracked the language of the Alabama statute. No court could, in good conscience, hold that the application was insufficient for lack of description when it utilized verbatim the language of the statute. We are of the opinion that the Alabama rule announced in the Wiggins case is not applicable in Mississippi for two reasons. First, it is predicated upon the express language of a statute, and second, it is far too liberal under a reasonable interpretation of the word “certainty” found in the Mississippi statute. For these reasons the additional cases of Alabama Power Company v. Matthews, 226 Ala. 614, 147 So. 889 (1933) and Collins v. Alabama Power Company, 214 Ala. 643, 108 So. 868, 46 A.L.R. 1459 (1926), are not applicable in the present case.
The opposite and more conservative rule has been adopted in Florida as reflected in Florida Power Corporation v. Wenzel, 113 So.2d 747 (Fla.App.1959). The Florida rule is excoriated by appellant as being a maverick decision and in no way binding upon this Court. In the Wenzel case the application for eminent domain specifically stated that twenty “danger trees” were to be cut adjacent to the right-of-way. There the landowner at least knew the number of “danger trees” which were to be presently condemned and severed. The Florida court upheld the right to condemn “danger trees” situated off the right-of-way as being within the scope of the Florida statute. However, in reversing on the insufficiency of the description in the application, the court stated that the application should be amend *478 ed to show specifically the land area within which the license was to be exercised or the twenty trees were to be cut.
Appellant urges that the above holding by the Florida court is pure dictum in addition to being bad law. With this contention we cannot agree. We are of the opinion, however, that the Florida rule is equally inapplicable in Mississippi for the following reason. We do not feel that it is essential under section 2751, supra, for appellant in the present case to specifically designate the entire area adjacent to the 125 foot right-of-way where “danger trees” are to be condemned and severed.
Although not cited in litigants’ briefs, the New York case of Bell Telephone Company of Buffalo v. Parker, 187 N.Y. 299, 79 N.E. 1008 (1907), is more harmonious with the requirements of section 2751, supra, than are the rules adopted in either the Alabama or the Florida case. There condemnation proceedings were brought under the express provisions of a New Yoidc statute which required a specific description of the property sought to be condemned. The telephone company as condemnor sought to trim shade trees on the landowner’s property in order that a way could be made for the erection of telephone wires. The condemnor’s petition stated that the petitioner desired to acquire the right “to trim such trees as may be necessary to protect said line from interference.” 187 N.Y. at 303, 79 N.E. at 1009. In sustaining the landowner’s objection to the petition the New Yoidc court held that to legally condemn any portion of the landowner’s trees in the vicinage of the telephone line, the degree of proximity requisite for the removal of such trees must be definitely ascertained and described in the petition. The court held that by showing the location of the telephone poles with the position of the crossarms proposed to be placed thereon, it might be ascertained with reasonable certainty what damage would be done in trimming the trees. In conclusion, the court stated that the command of the condemnation law is that the petition shall contain a specific description of the property sought to be condemned and that its location by metes and bounds must be disclosed with reasonable certainty. It noted that this rule is so obviously consonant with the requirements of fairness and justice that it would not hesitate to adopt it unless otherwise constrained by controlling authority.
We are of the opinion that the application in the present case with reference to the description of “danger trees” to be presently condemned and severed is sufficient in light of the rule announced in United States ex rel. and for Use of Tennessee Valley Authority v. Easterly, 87 F.Supp. 390 (E.D.Tenn.1948). In that case the government sought to condemn a portion of respondent’s property for use as a right-of-way upon which an electric transmission power line was to be constructed. The petition for condemnation also sought authorization “ * * * to cut and remove any and all trees now or hereafter growing, beyond the limits of said right of way, any part of which would in falling directly toward the line strike any structure or conductor of said line or come within five (5) feet of any conductor.” 87 F.Supp. at 391. In upholding the sufficiency of the condemnation petition insofar as the description of “danger trees” was concerned, the court said:
Danger trees have been defined with reasonable accuracy, and the nature of the situation determines that such trees will be located along the transmission line right of way, which has been surveyed and described with exactness. There remains, therefore, no reason for more definite pleading on the part of petitioner. 87 F.Supp. at 391.
See United States ex rel. and for Use of Tennessee Valley Authority v. Susong, 87 F.Supp. 396 (E.D.Tenn.1948); United States ex rel. and for Use of Tennessee Valley Authority v. Payne, 87 F.Supp. 393 (E.D.Tenn.1948); United States ex rel. and for Use of Tennessee Valley Authority v. Russell, 87 F.Supp. 386 (E.D.Tenn.1948).
*479 The record reflects that the application.in the present case is couched in substantially the same language as that approved in the Tennessee Valley Authority cases, supra, insofar as the description of “danger trees” is concerned. For this reason, we conclude that appellant’s application is sufficiently certain in its description to meet the requirements of section 2751, supra; accordingly, we are compelled to reverse the judgment of the lower court making permanent its writ of prohibition.
The statutory right of eminent domain is an extraordinary right and one which must be scrupulously exercised in strict compliance with the statute. For this reason, it appears to us that it will be necessary for appellant in the trial of the eminent domain suit below to designate the number, the kind and the location of the trees which are to be presently cut as “danger trees.” Appellant should make proof of these facts in the trial of the case. Otherwise, the eminent domain jury cannot determine when a tree becomes a “danger tree” since they are not mathematicians and are not skilled in the application of plane geometry. It follows, therefore, that a bill of particulars will lie to require appellant to furnish the above information to the landowner if requested.
By designating the number, the kind and the location of the “danger trees” which are to be presently condemned and severed, the eminent domain jury can determine to what extent the rights of appellees will be invaded by appellant in the exercise of this extraordinary right of eminent domain. The jury will also be able to determine at an early date which trees will be required to be cut as “danger trees” within the next five or ten years. Furthermore, the extent of the uninhibited right of reasonable ingress and egress over the land adjacent to the 125 foot right-of-way can be considered by the jury in determining the extent o£ appellees’ damages.
In passing, we note that appellant urges-that its application for eminent domain is couched in the identical language of the petitions approved in the Tennessee Valley Authority cases, supra, insofar as the application of the “danger tree” doctrine is concerned. However, we point out that in appellant’s application authorization is sought to condemn and sever any trees which might come within five (5) feet of any “conductor or structure.” The petitions in the Tennessee Valley Authority cases only sought authority to cut trees which might come within five (5) feet of any “conductor.” In other words, the application in the present case transcends the right sought under the petitions in the Tennessee Valley Authority cases since appellant here seeks additional authority to cut any trees which may come within five (5) feet of any “structure,” which term this Court construes to include anything constructed or built, including guy wires.
In conclusion, the trial court was correct in excluding the testimony of appellant’s expert witness, Mr. Carley, relative to determining whether the application described with sufficient certainty the “danger trees” to be condemned and severed. The testimony of a forester is of no-value in determining the sufficiency of a pleading with reference to definiteness.
For the foregoing reasons, the judgment of the lower court is reversed and judgment rendered here for appellant, dismissing the permanent writ of prohibition.
Reversed and judgment here for appellant.
ETHRIDGE, C. J., and RODGERS, JONES and SMITH, JJ., concur.