409 So.2d 1325 (1982)
Lamar CLARK
v.
STATE of Mississippi.
No. 52999.
Supreme Court of Mississippi.
February 17, 1982.
*1327 Richard W. Hamilton, Pascagoula, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and DAN M. LEE, JJ.
HAWKINS, Justice, for the Court:
Lamar Clark was indicted by the grand jury of Jackson County on October 5, 1979, along with Joseph Kuljis, Jr., Suzanne Baraboo and eight others of conspiracy to possess a controlled substance with intent to deliver.
He was tried alone on December 11, 1980, convicted, and sentenced to serve a term of five years in the Department of Corrections and fined $5,000.00. We reverse.
The record reveals seizure of approximately 22 tons of marijuana in Pascagoula, following which eleven individuals were indicted. There was ample evidence to support the verdict of the jury; indeed, there was no assignment of error based upon insufficiency of the evidence, and no purpose would be served in detailing the factual background.
It was reversible error for the circuit judge to admit certain instruments written in Spanish into evidence without their being first translated, and their materiality as well as competency determined.
The State offered these documents into evidence through Richard Humphreys, an agent for the Mississippi Bureau of Narcotics, over the objection of the defendant. The defendant further objected when Humphreys, who could not speak Spanish, testified to the English translation of some of the words, which a high school Spanish teacher had previously interpreted for him. Based on this translation, Humphreys concluded, as an expert, that the words were an "elaborate code system ..., obviously a well kept record of what appeared to me to be a well organized smuggling group or smuggling operation... ."
Of these several instruments written in Spanish, almost all the words would be completely unintelligible to a juror unless he was fluent in Spanish. We do not know if the State or defense voir dired the jury on their ability to read Spanish, but presumably, they did not. We must conclude that the jury did not understand, as this Court does not understand, the meaning of the vast majority of the words on these writings. Not only were they admitted into evidence without giving the jury any idea of the meaning of most of the words thereon, but the State was also permitted to invidiously characterize them as against the defendant.
We believe materiality was shown in the documents which contained the name of the defendant; however, the other papers would be material only after a proper showing that they were relevant evidence pertaining to the illegal conspiracy and smuggling, or possession or sale of marijuana.
Prerequisite to the admission into evidence of any written instrument are materiality and competency. As to any document written in a foreign language, it was first incumbent upon the prosecution to have a knowledgeable person translate the *1328 meaning of the words into English. The jury should not have been left to conjecture as to the meaning of almost all the words thereon. 32 C.J.S. Evidence § 679, states:
Instruments written in a foreign language may be admitted into evidence in connection with a showing of their meaning in English, but are not admissible without a translation into English, at least where the party offering the instrument has had an opportunity to have a translation made.
After translation, the trial court must examine the documents and their translation to determine whether they are innocuous and irrelevant, or material. If irrelevant, they should be excluded. If material, and the words after translation need no further explanation by an expert, they should be submitted to the jury. If an expert is required to show the true purpose and intent of the documents, a duly qualified expert may do so.
It is improper to permit a witness to testify to the meaning of words or statements, however, unless they have some unusual or technical meaning peculiar to a certain trade, operation or business. Mississippi Power Co. v. Leggett, 197 So.2d 475, 479 (Miss. 1967); Smith v. State, 99 Miss. 859, 879, 56 So. 179, 183 (1911); 31 Am.Jur.2d Expert and Opinion Evidence § 171.
Not having the benefit of the translation, this Court cannot pass upon the necessity of an expert to give the true purpose and intent of these instruments after the translation into English. We leave this for the trial judge's determination upon remand. Excellent examples of the need for further delineation of words peculiar to an illegal operation are in two Florida cases, Slater v. State, 356 So.2d 69 (Fla. Dist. Ct. App. 1978), and Llerandi v. Blackburn, 97 So.2d 247 (Fla. 1957).
In Slater the defendant was convicted of a conspiracy to sell or deliver cocaine, and complained of the police officer giving the meaning of certain words contained in intercepted conversations. The Florida District Court of Appeal, First District, responded as follows:
By his fifth point appellant contends that the trial judge committed reversible error when permitting a police officer, over the objection of the defendant, to be qualified as an expert witness regarding street language in the drug culture and permitting the officer to explain to the jury his interpretation of words used by the alleged conspirators in intercepted conversations, the tapes of which were played to the jury. During those conversations the speakers used the terms "C"; "white girl"; "lady"; "snow"; "party pack"; "rock and roll"; "boy"; "white boy"; "doogee"; "kattie" and the expression "three, but I know a duece smoking." The words were used in contexts wherein their normal lexicographical meanings would be illogical and meaningless. They would make no sense at all to the average juror. We find no error.
356 So.2d at 71.
In Llerandi a police officer, testifying as an expert, was permitted to identify certain slips of paper as lottery tickets. The Florida Supreme Court held this proper, after the state had shown that the officer had investigated 180 lottery cases, questioned numerous persons involved in lotteries, and had participated in Cuban lotteries as an undercover agent for the police department.
Aside from what we have already stated, it was further error for the circuit judge to permit agent Humphreys to give his opinion of the purpose and intent of these documents based in part upon their translation by a third party, since this translation was not within his own knowledge and not in evidence. Spears v. State, 241 So.2d 148 (Miss. 1970); Wild v. Bass, 252 Miss. 615, 173 So.2d 647 (1965).
The defendant also argues that the circuit judge improperly excluded from evidence three written memoranda on the letterhead of "H & D Seafood", indicating that Clark had worked for this firm on May 8, 1979, July 8, 1979, and August 20, 1980. Only one of the dates is material, July 8, 1979, a date when the co-defendant Kuljis *1329 testified that Clark would have been on the boat used in smuggling the marijuana. All three of the memoranda could be material, however, in showing Clark did occasionally perform labor for this firm, working on boats.
Hudson Larry Murray testified that he was president of H & D Seafood, and that his firm bought shrimp and fish, and had five boats. He knew Clark, who had been selling to him off and on for eight or nine years, had helped him rig boats and had done other occasional work for his business. He testified that the three memoranda were "paid tickets for labor" made in the usual course of business, and, in his opinion, written by his partner of three years. The memoranda were kept for record keeping either in Gulfport or with the firm's bookkeeper in Laurel. Although these documents were admissible, in any event, the state informed the court it did not object to them as violative of the hearsay rule, but because they were not "authenticated". Upon remand the trial judge must determine the materiality of the tickets dated May 8, 1979, and August 20, 1980, but sufficient predicate was laid as to the competency of each.
As is apparent in our holding in King v. State, ex rel. Murdock Acceptance Corp., 222 So.2d 393 (Miss. 1969), this Court has adopted the modern and more liberal rule in the admission into evidence of written instruments concerning business transactions, including computer printouts.
32 C.J.S. Evidence § 625 in speaking to this question, states:
Where there is adequate proof of the execution and identity of the document offered it may, in an otherwise proper case, be admitted. As to the sufficiency of the proof of the execution of a document, the rule has been laid down that the party offering it is only required to make out a prima facie case to render it admissible.
It is further stated in § 740:
Where a written instrument is not attested by any subscribing witnesses, it is nevertheless admissible, although other evidence of execution or authenticity must be resorted to. In such a case, any competent proof may be used to prove the instrument. It may be proved ... by the testimony of any one familiar with his handwriting... .
As stated, upon remand the trial judge must determine the materiality of the two tickets dated May 8, 1979, and August 20, 1980, but there was sufficient foundation laid to render them all competent. See also State, ex rel. Patterson v. Sims, 253 Miss. 458, 176 So.2d 261 (1965). Their credibility will be for the jury to weigh and consider.
Clark next assigns as error the refusal of the trial judge to disqualify the district attorney and his entire staff from prosecuting the case because of an alleged professional conflict of interest involving Louis Guirola, assistant prosecutor.
Following their indictment, Joseph Kuljis, Jr., and Suzanne Baraboo retained the legal services of Boyce Holleman, at which time Mr. Guirola was associated with the firm. Mr. Guirola prepared and filed discovery and severance motions on behalf of these defendants. Thereafter, he terminated his legal association with Mr. Holleman and was employed by the district attorney as assistant prosecutor. For reasons not shown in this record, the legal services of the Holleman firm were discontinued and Joseph Kuljis, Jr., and Suzanne Baraboo employed Oscar B. Ladner to represent them. On August 7, 1980, Mr. Ladner presented a motion for the district attorney to recuse himself because Mr. Guirola was assistant prosecutor at that time, and a professional conflict of interest existed. Clark's counsel, Richard W. Hamilton, also filed a motion for the district attorney and his entire staff to be removed from prosecuting the case, assigning the same supporting reason therefor as Kuljis and Baraboo.
The trial court overruled the motions filed on behalf of the defendants Kuljis and Baraboo, as well as Clark.
The motion Mr. Ladner made that a conflict of professional interest involving Mr. Guirola and his client existed was manifestly *1330 well taken in August, 1980. We are not confronted with that position here, however. Clark was never represented or questioned by Guirola or the Holleman firm as attorneys for Kuljis and Baraboo. We do not even have a question of Mr. Guirola representing Kuljis and Baraboo at the time they pled guilty. Another attorney represented them in that plea. There was clearly no professional conflict of interest which would prejudice Clark.
The other assignment of error is the refusal of circuit Judge Maples to recuse himself. This case understandably excited public interest and caused considerable media comment.
Six of Clark's co-defendants pleaded guilty before another circuit judge in May, 1980, and were sentenced to prison terms and fined $20,000 each.
During this period some county officials and citizens saw in this case an opportunity to help finance the county, while others became concerned with what they perceived as a guilty person buying his freedom from the penitentiary.
Judge Maples met with some county officials at a luncheon a few days before these six co-defendants pleaded guilty, at which time the idea of this quick financing was broached, and immediately opposed by the district attorney (also in attendance) if the county officials had these particular six defendants in mind. The circuit judge agreed with the district attorney. As stated, Judge Maples had nothing to do with the trial or guilty pleas of these six co-defendants.
After the luncheon meeting with the county officials, Judge Maples held an audience for some 15 ministers, who presented him with a petition asking for strict law enforcement and prison sentences for all major drug offenders.
These facts or factors reveal no prejudice against the defendant in allowing Judge Maples to hear this case in December, 1980.
Since this case is being remanded for a new trial, and since this is not a single-judge district, we do in deference to Judge Maples suggest that another trial judge hear the case. In making this suggestion we do not mean to imply the judges of this state, especially trial judges, should seclude themselves from the public.
Trial judges have the duty of complete impartiality in the trial of any case, and responsibility to maintain complete independence and integrity in hearing and deciding any case. This does not mean they cannot be in attendance at a meeting of public officials, or give an audience to any one or more groups of citizens.
Of course, if a judge learns before-hand that the purpose of some meeting would compromise the independence of his judicial conduct, he should not attend. Likewise, we do not doubt practically every judge has had occasion to remind people who seek their audience that they cannot discuss any pending case.
If this government is to remain democratic, judges must have the independence to decide each case on its merits to the very best of their minds, hearts and conscience. The striving for this goal by any judge is not impeded, however, by courteously listening to citizens not seeking to influence his judicial decisions. A good judge is capable of quickly correcting any improper suggestion or erroneous impression of the judicial function.
These comments are not meant to be didactic. The trial judges of this state are in no need of instruction by this Court as to their duties or responsibilities.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, BROOM, ROY NOBLE LEE, BOWLING and DAN M. LEE, JJ., concur.