## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KA-01416-SCT

*JOSEPH SAMUEL LEWIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/1998 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GLENN F. RISHEL, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/08/2000 |
| MOTION FOR REHEARING FILED: | 6/23/2000; denied 9/7/2000 |
| MANDATE ISSUED: | 9/15/2000 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Joseph Samuel Lewis was tried and convicted in the Circuit Court of the First Judicial District of Harrison County for five separate sales of crack cocaine. *See* Miss. Code Ann. § 41-29-139(f) (1999).[1] Lewis was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections without the possibility of probation, parole, reduction, or suspension of the sentence. Aggrieved by his conviction, Lewis appeals to this Court, assigning ten issues for review.

### STATEMENT OF FACTS

¶2. The State offered the testimony of Steven Maxwell, an agent with the Mississippi Bureau of Narcotics, who described the events from five separate purchases of crack cocaine involving Lewis:

¶3. On November 4, 1996, Maxwell, Chris Loposser, who is a special agent with the Bureau, a confidential informant, and several other agents participated in a "pre-buy" meeting to prepare for an to

attempt to buy crack cocaine from Lewis. At this meeting, Maxwell was equipped with an audio transmitter and given $1,000 of state funds to make a purchase. Maxwell and the confidential informant then went to Lewis' residence at 823 Church Street, Gulfport, Mississippi. The other officers went to a nearby location to monitor the transaction. Upon arriving at Lewis' residence, the confidential informant introduced Maxwell to Lewis. After Lewis asked Maxwell what he wanted, Maxwell replied that he wanted one ounce of crack cocaine. Lewis stated that he had to place a telephone call and then the crack would arrive shortly after the call. Lewis placed the call and thereafter Lewis' son, Terrance Lewis (Terrance), arrived at Lewis' residence. With Lewis standing close by, Maxwell gave Terrance the $1,000, and Terrance gave Maxwell the crack cocaine. Maxwell then returned to the Bureau's Gulfport District Office where he gave the crack cocaine to Loposser.

¶4. On or about November 8, 1996, Lewis paged Maxwell. When Maxwell called Lewis, Maxwell told him that he wanted to purchase two ounces of crack cocaine.[(2)] Lewis advised Maxwell that Maxwell had "shorted" him $100 on November 4 since the price of an ounce of crack cocaine was $1,100. Maxwell apologized for the misunderstanding and agreed to compensate Lewis for the difference at the next sale. An audio recording of this conversation was introduced into evidence and played for the jury.

¶5. On November 10, 1996, Maxwell attended a "pre-buy" meeting where he was issued $2,300 to purchase two ounces of crack cocaine and to make up the $100 difference from the previous sale. Upon arriving at Lewis' residence, Maxwell spoke with an unknown female who paged Terrance for Maxwell. When Terrance called, Maxwell informed Terrance that he was there to purchase two ounces of crack cocaine. Shortly thereafter, Terrance arrived at his father's residence and he and Maxwell went into Lewis' bedroom where Lewis was asleep on the bed. Maxwell gave Terrance the $2,300 in exchange for the crack cocaine. Upon completing the transaction, Maxwell returned to the Bureau's office and gave the crack cocaine to Loposser.

¶6. On November 18, 1996, Maxwell placed a call to Lewis and informed him that he wanted to purchase two or three ounces of crack cocaine. Lewis replied that such a transaction would not be a problem. Maxwell attended another "pre-buy" meeting where he was issued $2,200. Upon arriving at Lewis's residence, Lewis placed a telephone call and shortly afterwards, Terrance arrived. Terrance gave the crack cocaine to Lewis, who handed it to Maxwell, and Maxwell gave the funds to Terrance. At the conclusion of the transaction, Maxwell returned to the Bureau's office and gave the crack cocaine to Loposser. An audio recording of this transaction was introduced into evidence and played for the jury.

¶7. On December 16, 1996, Maxwell talked with Lewis on the telephone. Following the conversation, Maxwell engaged in another "pre-buy" meeting where he was issued $2,750. At Lewis' residence and in Lewis' presence, Maxwell negotiated a deal with Terrance and exchanged the $2,750 for the crack cocaine. An audio tape recording of this transaction was introduced into evidence and played for the jury.

¶8. On January 9, 1997, Maxwell paged Lewis. Upon returning the page, Maxwell informed him that he wanted to purchase three ounces of crack cocaine. Lewis told him that he would have to check to see if such an amount was available. Shortly thereafter, Maxwell received a page with Lewis's telephone number and the number "3000" behind it. Maxwell called Lewis and told him he was on his way to Lewis's residence to make the purchase. Maxwell attended the last "pre-buy" meeting where he received $3,300. Upon arriving at Lewis' residence, Maxwell engaged in a brief conversation with Lewis and Terrance and gave the $3,300 to Terrance in exchange for the crack cocaine. Lewis was present throughout the

transaction.

¶9. After Maxwell testified to these matters, Loposser testified that he delivered to the State Crime Laboratory the substances from the November 4, 10, and 18, and December 16, 1996, transactions. Maxwell himself delivered to the State Crime Laboratory the substance from the January 9, 1997, transaction.

¶10. The State then offered the testimony of Linda Weeks and Alison Smith, employees of the State Crime Laboratory, who were accepted as experts in the field of drug analysis. Weeks testified that the November 4 and November 18 substances contained cocaine, weighing, respectively, .65 of an ounce and 1.37 ounces. Smith testified that the November 10, December 16 and January 9 substances contained cocaine, weighing, respectively, 1.4 ounces, 1.5 ounces, and 2.2 ounces. The combined weight of all of the substances was 7.1 ounces.

¶11. The State rested and the defense presented no witnesses.

## DISCUSSION

### I. WHETHER THE JURY'S VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

¶12. In Lewis' fourth, ninth, and tenth assignments of error,[3] he argues that the verdict was contrary to the sufficiency and weight of the evidence presented at trial.

¶13. "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial." *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Id.*

¶14. When reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict. When the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond our authority to disturb. *Taylor v. State*, 672 So. 2d 1246, 1255 (Miss. 1996).

¶15. The State is required to prove every element of the offense charged beyond a reasonable doubt. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991). As can be seen by the statute under which Lewis was charged, the State was required to prove that Lewis (1) was 21 years of age or older, (2) when he transferred or sold, (3) during any twelve consecutive month period, (4) two or more ounces of cocaine or of any mixture containing cocaine as described in § 41-29-105(s). *See* Miss. Code Ann. § 41-29-139(f) (1999).

¶16. The record indicates that the two forensic scientists examined the substances from each transaction and determined that each contained cocaine and that the substances combined weight was 7.1 ounces. However, as Lewis points out, the witnesses could not testify as to the total weight of cocaine in each of the substances. Thus, Lewis argues, the State failed to prove beyond a reasonable doubt that he transferred

"two or more ounces of cocaine or any mixture of cocaine as described in § 41-29-105(s)." That section, in pertinent part, states the following:

> "Narcotic drug" means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

> * * *

> (4) Cocaine, coca leaves and any salt, compound, derivative or preparation of cocaine, coca leaves, and any salt, compound, isomer, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine.

Miss. Code Ann. § 41-29-105(s) (1999).

¶17. We find that by the terms of § 41-29-139(f), where cocaine is incorporated into some other substance, the Legislature intended that the weight of the entire mixture be taken as the weight for purposes of criminal liability. Indeed, cocaine is one of the substances listed in § 41-29-105(s). Neither that section nor § 41-29-139(f) requires the State to identify the substance into which the cocaine or other substances listed in § 41-29-105(s) was mixed.

¶18. In most states where there is a statute specifically criminalizing the possession of a controlled substance or any mixture containing it, the courts have generally permitted the aggregation of the weights of the controlled substance and the "other" substance to satisfy the statutory weight requirement. *See **Lyons v. State***, 455 So. 2d 295 (Ala. Cr. App. 1984) (Defendant was properly charged with trafficking in cocaine, despite the fact that only 80% of the powder he was carrying, or 27.2 grams, was cocaine, and the remaining 20% was some other substance, in view of the fact that the trafficking statute provides that any person who is knowingly in actual or constructive possession of 28 grams or more of cocaine or of any mixture containing cocaine, described in section 20-2-25(1), is guilty of trafficking in cocaine). *See also **Belcher v. State***, 161 Ga. App. 442, 288 S.E.2d 299 (1982); ***Grogg v. State***, 417 N.E.2d 1175 (Ind. 1981); ***People v. Kidd***, 121 Mich. App. 92, 328 N.W.2d 394 (1982); ***State v. Tyndall***, 55 N.C. App. 57, 284 S.E.2d 575 (1981).

¶19. Considering the testimony of the forensic scientists that the aggregate weight of the substances was 7.1 ounces, the State provided sufficient evidence to support the statutory weight requirement.

¶20. As to the other elements of the crime, the uncontradicted testimony from Maxwell shows the following:

> 1. Lewis was born on March 10, 1951, making him older than twenty-one years of age;

> 2. All the transactions at issue occurred within a twelve consecutive month period;

> 3. Maxwell never engaged in a transaction with Lewis' son without first contacting Lewis;

> 4. Lewis quoted prices to Maxwell and brought up the fact of an underpayment on one occasion to Maxwell's attention;

> 5. Each of the transactions occurred within Lewis' home;

6. Each transaction took place when Lewis was standing near Terrance and Maxwell or at least present in the house; and

7. During one transaction, Lewis actually handed the cocaine directly to Maxwell.

In *Johnson v. State*, 642 So. 2d 924, 927 (Miss. 1994) (citing *Turner v. State*, 573 So. 2d 1340, 1342 (Miss. 1990)), we held that "one who aids and abets a sale of cocaine is guilty as a principal, regardless of whether he personally profited from the sale." *See also* *Minor v. State*, 482 So. 2d 1107, 1111-12 (Miss. 1986) (quoting *Williams v. State*, 463 So. 2d 1064, 1066 (Miss. 1985) ("[S]ubstantial knowing participation in the consummation of a sale or in arranging for the sale" is sufficient to support a conviction for sale of a controlled substance pursuant to Miss. Code Ann. § 41-29-139 (1972)).

¶21. Viewed in the light most favorable to the State the evidence is sufficient proof of "substantial knowing participation in the consummation of a sale or in arranging for the sale" of cocaine. This is not a case where reasonable jurors could only find Lewis not guilty. Further, we cannot say that the verdict is so contrary to the weight of the evidence in the record that a new trial is warranted. Accordingly, Lewis's fourth, ninth, and tenth assignments of error are without merit.

### II. WHETHER MISS. CODE ANN. § 41-29-139(f) (1999) IS UNCONSTITUTIONALLY VAGUE AND VIOLATIVE OF THE CONSTITUTIONAL PRIVILEGE AGAINST SELF-INCRIMINATION.

¶22. Lewis' first assignment of error challenges the constitutionality of § 41-29-139(f), alleging that it is vague, inviting arbitrary and capricious application, and violative of the privilege against self-incrimination. Because the trial court also expressed concerns about the statute in terms of our "separation of powers" doctrine, we will briefly address that issue. Section 41-29-139(f) provides as follows:

Except as otherwise authorized in this article, any person twenty-one (21) years of age or older who knowingly sells, barters, transfers, manufactures, distributes or dispenses during any twelve (12) consecutive month period: (i) ten (10) pounds or more of marihuana; (ii) two (2) ounces or more of heroin; (iii) two (2) or more ounces of cocaine or of any mixture containing cocaine as described in Section 41-29-105(s), Mississippi Code of 1972; or (iv) one hundred (100) or more dosage units of morphine, Demerol or Dilaudid, shall be guilty of a felony and, upon conviction thereof, shall be sentenced to life imprisonment and such sentence shall not be reduced or suspended nor shall such person be eligible for probation or parole, the provisions of Section 41-29-149, 47-5-139, 47-7-3 and 47-7-33, Mississippi Code of 1972, to the contrary notwithstanding.

This subsection of the statute then goes on to provide a "self-help" provision for those accused of offending the statute:

The provisions of this subsection shall not apply to any person who furnishes information and assistance to the bureau or its designee which, in the opinion of the trial judge objectively should or would have aided in the arrest or prosecution of others who violate this subsection. The accused shall have adequate opportunity to develop and make a record of all information and assistance so furnished.

¶23. Lewis argues that this statute is unconstitutionally vague both in its definition of the offense as well as its

"self-help" provision.

¶24. Regarding that part of the statute that creates the offense, Lewis specifically argues that it is void-for-vagueness because it cannot be ascertained whether one must transfer *all* of the required amounts of marihuana, heroin, and cocaine *or* one hundred or more dosage units of morphine, Demerol or Dilaudid or whether a transfer of only one of the substances named in the required amount will trigger operation of the statute.

¶25. The test to be used here is whether the statute defines the criminal offense with sufficient definiteness such that a person of ordinary intelligence has fair notice of what conduct is prohibited. *[Posters 'n' Things, Ltd. v. United States](#)*, 511 U.S. 513, 525, 114 S. Ct. 1747, 128 L. Ed. 2d 539, 552 (1994); *Robinson v. State*, 501 So. 2d 398, 400 (Miss. 1987). Applying that standard, we reject Lewis' claim that he was not given fair notice that the statute prohibited him from selling two or more ounces of cocaine or of any mixture containing cocaine. Although criminal statutes must be strictly construed in favor of the accused, we will not adopt an interpretation that is absurd or unreasonable. *Beckham v. State*, 555 So. 2d 342, 344 (Miss. 1990). It would be disingenuous to suggest, as Lewis does, that it is possible that the Legislature intended that only those who sold the required amounts of all of the substances listed could be punished under the statute. As the State points out, such a construction would lead one to believe that the Legislature had one particular individual in mind for prosecution. Applying common sense, evident statutory purpose, and simple rules of grammar, the word "or" relates back and is read into each of the preceding clauses. Reasonably construed, § 41-29-139(f) forbids the sale of any one or more of the substances named in it, provided that the other elements are met. Accordingly, Lewis's void-for-vagueness claim as to that part of the statute which creates the offense is without merit.

¶26. Section 41-29-139(f) also contains a provision which gives one accused of violating the subsection an opportunity to avoid prosecution under it by " . . . furnish[ing] information and assistance to the bureau . . . which in the opinion of the trial judge objectively should or would have aided in the arrest or prosecution of others who violate [the] subsection."

¶27. As to this "self-help" provision, Lewis points out that there are no specific guidelines or standards for the judge to apply in determining if the accused furnished information to the bureau which should or would have aided in the prosecution or others under that subsection. Lewis claims that this indefiniteness will lead to arbitrary and capricious prosecution. We agree. The "self-help" provision is less than clear as to what exactly is "information and assistance, how much "information and assistance" is required, and on what basis is it determined that the "information and assistance" should or would have aided in the arrest or prosecution of others under § 41-29-139(f).

¶28. Without objective standards in place, there is a danger of convictions on the basis of arbitrary and capricious judgment. Without more legislative guidance, there lies also the danger in the lines becoming blurred which divide the powers between the judicial branch in construing the laws and imposing sentences and the executive branch in prosecuting crime. *Washington v. State*, 478 So. 2d 1028 (Miss. 1985).

¶29. Without citing any supporting authority, Lewis also claims that the "self-help" provision requires an accused to waive his constitutional right against self-incrimination. Our state and federal constitutions protect against the State *compelling* an individual to testify against himself or to offer testimony which might render him liable to a criminal prosecution. *Moore v. Moore*, 558 So. 2d 834, 836 (Miss. 1990). Lewis overlooks the fact that there is nothing in the "self-help" provision which compels an accused to incriminate himself. As

such, this argument is without merit.

¶30. In sum, we find the "self-help" provision contained in § 41-29-139(f) to be unconstitutionally vague based on the due process clause of the Fourteenth Amendment to the United States Constitution. However, under Miss Code Ann. § 1-3-77 (1998), the clear intent of our Legislature is that the statute is severable and the remainder of that subsection is effective. Section 1-3-77 states, in pertinent part, the following:

> **If any section, paragraph, sentence, clause, phrase or any part of any act passed hereafter is declared to be unconstitutional or void, or if for any reason is declared to be invalid or of no effect, the remaining sections, paragraphs, sentences, clauses, phrases or parts thereof shall be in no manner affected thereby but shall remain in full force and effect.**

(Emphasis added.) There is no express language in the statutory scheme at issue which provides for the contrary of severability. As it would be an unbridled display of judicial activism to strike that portion of § 41-29-139(f) which creates the offense, it shall remain "in full force and effect."

> ### III. WHETHER THE TRIAL COURT ERRED IN FINDING THAT LEWIS FAILED TO DEMONSTRATE THAT HE HAD FURNISHED INFORMATION AND ASSISTANCE TO THE BUREAU WHICH IN THE OPINION OF THE TRIAL JUDGE OBJECTIVELY SHOULD OR WOULD HAVE AIDED IN THE ARREST OR PROSECUTION OF OTHERS UNDER § 41-29-139(f).

¶31. As stated above, §41-29-139(f) allows for an accused to avoid prosecution under it where he or she "furnish[es] information and assistance to the bureau or its designee which, in the opinion of the trial judge objectively should or would have aided in the arrest or prosecution of others who violate [the] subsection." Notwithstanding his attack on the constitutionality of this subsection, Lewis claims that he met the standard set forth to avoid prosecution.

¶32. In order to provide the accused a determination of the merit and worth of their information, the subsection places the responsibility for this determination with the trial court. Thus, when an indictment is returned against a person under the statute, and the accused believes he has information or assistance meeting the standard set out in the statute, the prosecutor disagreeing, it is an issue for judicial resolution.

¶33. The standard, of course, should be drawn to be more definite as to what type and to what degree of information and assistance offered by the accused would lead a judge to determine that such information or assistance should or would have aided in the arrest or prosecution of others who violate the subsection. Nevertheless, under no set of guidelines-however vague or specific-did Lewis present assistance or information that would have led the trial judge to conclude that such information should or would have aided in the prosecution of others who violate the subsection.

¶34. The record reveals some confusion in the trial court as to when it was to entertain testimony concerning the "self-help" provision. The provision is written to relieve the *accused*, and not the convicted. Therefore, the statute should operate before trial only and a determination by the judge should be made at that time. This is logical in that it would be a waste of judicial resources in empaneling a jury where it is possible that the defendant may offer assistance that would totally relieve him from prosecution under the subsection. To the contrary, the trial judge allowed testimony concerning the "self-help" provision both prior to and after trial.

¶35. Prior to trial, Lewis sought a continuance to be released from jail so that he might provide assistance to the Bureau and relieve himself of prosecution under the § 41-29-139(f). Lewis testified that he had contacted agent Steven Maxwell of the Bureau and informed Maxwell that he and a named friend had information concerning major drug trafficking through Gulfport. Although Lewis admitted that he could not identify any individuals in particular, save possibly one named Willie Brown, Lewis claimed that he and his friend needed to be released from jail so that they could "get up under them":

(Direct Examination of Joseph Lewis)

BY MR. RISHEL:

Q. What efforts have you made to assist them?

* * *

A. Well I talked with the MBN, and I talked with Stephen Maxwell, and I told him that me and a friend of mine, we have a lot of information that we could give them, and he's a major drug transporter that's into this town, real drug transporters that's coming in, and they Mexicans, and they're transporting maybe a week 500 to 600 pounds.

BY THE COURT: Five pounds of what?

A. Marihuana

BY THE COURT: Go ahead.

A. And gobs of cocaine and heroin that they're brining in also. And I talked with him and I told them that how we would have to get up under these people because they are Mexican Mafia, and I told them how we have to get up under these people.

BY MR. RISHEL:

Q. Okay, sir. Are you aware of how many states they operate in?

A. Probably about seven.

Q. Okay. Do you know these people.

A. Yes, I know them. But they done changed their crews up that they are shipping it in here. I think Willie is the only one, Willie Brown, he's the only one still coming in. They are running a lot of alias names. They are changing people shipping in. A lot of them don't have green cards, they transporting.

Q. Could you tell us the names of anyone in particular that you know of that's involved in the Mexican Mafia?

A. Yes. Here in Gulfport?

Q. In Gulfport, Long Beach?

A. I don't know who they dropping to.

Q. What -

A. I don't know who all doing the buying. I've been locked up over a year. March 10th will be a year. And they would set up a weigh station here now. They was setting up in motels. Now they set up in the weigh station between Long Beach and Pass Christian in townhouses big time.

Q. Do you know where townhouses are?

A. No. I don't know where they got-they got townhouses now. I understand that they are paying $1, 200.00 a month now.

* * *

BY THE COURT:

Q. Mr. Lewis, in order to-if [the Bureau] were to accept your assistance could you provide this assistance by Monday or Tuesday of next week?

A. Well the only thing that I can provide is if they give me a bond and, if they give us a bond and take MBN and start buying from them. That's the only way you get in with these people.

Based on the foregoing testimony and the court's doubt as to the constitutionality of the "self-help" provision, the trial judge denied the motion for continuance and proceeded with trial. After Lewis' conviction and during the sentencing phase, Lewis testified that he had informed Maxwell of the names of other individuals trafficking drugs out of Oklahoma and Texas into Gulfport. However, Maxwell and Sam Owens, a Master Sergeant with the Bureau, testified that Lewis did not contact the Bureau until six months after his arrest and that by that time the information Lewis wanted to give was already largely known and was of no benefit to the Bureau, especially in light of his diminished contacts with any major drug dealers due to the time he had spent in jail. The trial court once again denied Lewis relief under the "self-help" provision, finding the information and assistance he offered to be insufficient to satisfy the statute.

¶36. Considering the testimony from Lewis and the Bureau, it is clear that the judge correctly found that Lewis had failed to give sufficient information and assistance to the Bureau-regardless of the indefiniteness of the type and degree of information required-that objectively should or would have aided in an arrest or prosecution of other violators of § 41-29-139(f).

¶37. Unlike other cases where we have reversed and rendered on the conviction of the defendant where we found the statute to be unconstitutional, it is only the "self-help" provision of the statute and not that part of the statute which creates the offense which offends our Constitution. And since the facts show that Lewis could not have availed himself of the "self-help" under any imaginable set of guidelines, his conviction and sentence will not be disturbed under this assignment of error.

### IV. WHETHER LEWIS'S INDICTMENT OFFENDS THE PROVISIONS OF RULE 7.07 OF THE UNIFORM CIRCUIT AND COUNTY COURT RULES.

¶38. In his seventh assignment of error, Lewis claims that the indictment against him which charged him with five separate sales of cocaine or mixtures containing cocaine violates Rule 7.07 of the Uniform Rules of Circuit and County Court Practice concerning multi-count indictments. The pertinent part of that rule reads

as follows:

> A. Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (1) the offenses are based on the same act or transaction; or (2) the offense are based on two (2) or more acts or transaction connected together or constituting parts of a common scheme or plan.

¶39. The rules of law restricting the use of multi-count indictments are in place to prevent the accused from having to defend a number of separate and unrelated charges in one proceeding. However, Rule 7.07 permits joining of offenses in one indictment where the offenses are based upon transactions connected together or constituting parts of a common scheme or plan.

¶40. In enacting § 41-29-139(f), the Legislature was attempting to punish and deter major drug dealers of controlled substances, persons who engage in an ongoing scheme or plan to transfer such substances. In order to prove one offense, a violation of § 41-29-139(f), the indictment included five acts which constituted a common scheme to deal in a controlled substance. The record reveals that the State was not attempting to secure convictions on each of the five transfers. Accordingly, Rule 7.07 was not violated, and this assignment of error is without merit.

### V. WHETHER THE TRIAL COURT COMMITTED ERROR IN ALLOWING INTO EVIDENCE THE CRACK COCAINE SOLD BY LEWIS AND WHETHER THE TRIAL COURT COMMITTED ERROR IN PERMITTING MAXWELL TO EXPLAIN THE MEANING OF THE PHRASE "TWO FOR TWENTY TWO".

¶41. Lewis complains of three matters in his fifth assignment of error. First, he argues that the trial court erred in allowing admission into evidence the crack cocaine he sold to Maxwell; secondly, he argues that the trial court erred in allowing Maxwell to explain the meaning of the phrase "two for twenty two"; and thirdly, he argues that the trial court erred in permitting Maxwell to testify that Lewis had arranged one of the transactions.

¶42. The admission of evidence is largely within the discretion of the trial court, and we will reverse only where there has been an abuse of discretion. The discretion of the trial court must be exercised within the boundaries of the Mississippi Rules of Evidence. *McIlwain v. State*, 700 So. 2d 586, 590 (Miss. 1997).

¶43. Regarding the first contention, Lewis specifically asserts that the State failed to lay the proper predicate for admitting into the evidence the crack cocaine because the State failed to "show the method of testing the substances alleged to contain the cocaine was reliable and accurate since the devices used to determine whether the substances contained cocaine were not shown to have been functioning and calibrated properly at the time of the testing." Contrary to Lewis' assertion, the record reveals that the forensic scientists performed a control test on the mass spectrometer for each sample of cocaine tested, performed an auto tune which automatically calibrated that instrument, and performed a controlled test on the ultraviolet spectrophotometry instrument. Both instruments indicated the presence of cocaine in each substance tested. Given the auto tune and control tests performed, any question as to whether the instruments were calibrated and functioning goes only to the weight and credibility of the test results.

¶44. Regarding Lewis' second contention that the trial court erred in permitting Maxwell to explain to the jury the meaning of the phrase "two for twenty two," we find his argument to be without merit. Maxwell was

permitted to explain to the jury that this phrase meant two ounces of crack cocaine for $2,200. Citing *McDavid v. State*, 594 So. 2d 12 (Miss. 1992), Lewis specifically contends that Maxwell's explanation was an impermissible characterization of Lewis and Maxwell's conversation. Lewis' reliance on *McDavid* is misplaced. There, we deemed it improper for the trial court to have allowed a witness to characterize a certain conversation. The testimony should have been limited to a relation of the actual conversation, rather than a characterization of the conversation. Here, Maxwell was not characterizing a conversation; rather, he was explaining the meaning of a street phrase used in conversing with Lewis. While it may be the general rule that a witness is not to testify to the meaning of words or statements, an exception exists where the words or statements have an unusual or technical meaning peculiar to a certain trade, operation or business. *Clark v. State,* 409 So. 2d 1325, 1328 (Miss. 1982). Maxwell's explanation of the phrase was well within this exception.

¶45. Finally, Lewis argues that the trial court erred in permitting Maxwell to testify that Lewis had arranged the transaction that occurred on November 10, 1996. While it is unclear to us exactly what Lewis' objection is, we take note that Maxwell made this comment only after he gave his personal knowledge for the statement. We also take note that this statement was subject to cross-examination. Further, we find harmless any error in allowing that statement into evidence as the overwhelming weight of the evidence shows that Lewis did in fact arrange for the November 10, 1996, transaction. Accordingly, this assignment of error is without merit.

## V. WHETHER JURY INSTRUCTION S-1A WAS AN INCORRECT STATEMENT OF THE LAW, CONFUSING, AND NOT SUPPORTED BY THE FACTS OF THE CASE.

¶46. In his eighth assignment of error, Lewis complains that Jury Instruction S-1A failed to require the jury to find beyond a reasonable doubt one of the elements of § 41-29-139(f). Lewis argues that the instruction failed "to mention any mixture containing cocaine as described by Section 41-29-105(s)." He admits, however, that the instruction complained of did require the jury to determine whether he sold or transferred two or more ounces of cocaine or of any mixture containing cocaine. More specifically, his complaint is that the instruction did not require the statutory language "as described in Section 41-29-105(s)" after the language "or of any mixture containing cocaine."

¶47. As stated above, neither § 41-29-139(f) nor § 41-29-105(s) requires the State to identify the substance into which the cocaine or other substances listed in § 41-29-105(s) was mixed. Section 41-29-139(f) does not say that the mixture prohibited by it means a mixture of cocaine into one of the other substances listed in § 41-29-105(s). The correct reading of §§ 41-29-105(s) and 41-29-139(f) is that a sale or transfer of any substance into which any of the substances listed in § 41-29-105(s) have been mixed is a violation. Cocaine is certainly one of the substances listed in § 41-29-105(s). It is true that a trial court should follow the safe course by instructing a jury in the words of the statute upon which the instruction is based. *Sanders v. State*, 586 So. 2d 792 (Miss. 1991). However, given the facts and evidence presented in this case, we find harmless any error in omitting the phrase at issue.

## VII. WHETHER THE TRIAL COURT ERRED IN DECLINING TO SUBMIT THE MATTER OF THE LEWIS' SENTENCING TO THE JURY.

¶48. In his sixth assignment of error, Lewis asserts that the trial court violated Rule 10.04(B) of the Mississippi Uniform Rules of Circuit and County Court Practice in that the trial judge sentenced Lewis to life imprisonment without providing a sentencing hearing before the jury on that determination. Contrary to

Lewis' argument, Rule 10.04(B) does not mandate that he be given a sentencing hearing before a jury. The rule states, in pertinent part, "If the defendant is found guilty of an offense for which life imprisonment *may* be imposed, a sentencing trial shall be held before the same jury, if possible, or before the court if jury waiver is allowed by the court." (Emphasis added.) This rule requires a sentencing hearing only where a life imprisonment sentence is optional. Here, however, a conviction under § 41-29-139(f) requires a life imprisonment sentence. Accordingly, this assignment of error is without merit.

## CONCLUSION

¶49. For the foregoing reasons, we declare unconstitutional the "self-help" provision of § 41-29-139(f), but affirm Lewis' conviction and sentence and the judgment of the Harrison County Circuit Court.

¶50. **CONVICTION OF FIVE COUNTS OF SELLING OR TRANSFERRING, AT A TIME WHEN HE WAS OVER TWENTY-ONE (21) YEARS OF AGE AND DURING A TWELVE (12) CONSECUTIVE MONTH PERIOD, TWO (2) OUNCES OR MORE OF COCAINE OR A MIXTURE CONTAINING COCAINE AS DESCRIBED IN MISS. CODE ANN. § 41-29-105(s) , A SCHEDULE II CONTROLLED SUBSTANCE; AND SENTENCED AS AN HABITUAL OFFENDER TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE NOT TO BE REDUCED OR SUSPENDED, AND WITHOUT POSSIBILITY OF PROBATION OR PAROLE, AFFIRMED.**

**SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., PITTMAN, P.J., AND McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**BANKS, PRESIDING JUSTICE, DISSENTING:**

¶51. Because I disagree with the majority's holding that Miss. Code Ann. § 41-29-139(f) can be successfully severed, I respectfully dissent.

¶52. Section 41-29-139(f) provides that:

any person twenty-one (21) years of age or older who knowingly sells, barters, transfers, manufactures, distributes or dispenses during any twelve (12) consecutive month period: (i) ten pounds (10) or more of marihuana; (ii) two (2) ounces or more of heroin; (iii) two (2) or more ounces of cocaine or of any mixture containing cocaine . . . ; or (iv) one hundred (100) or more dosage units of morphine, Demerol or Dilaudid, shall be guilty of a felony and upon conviction thereof, shall be sentenced to life imprisonment and such sentence shall not be reduced or suspended nor shall such person be eligible for probation or parole . . . . **The provisions of this subsection shall not apply to any person who furnishes information and assistance to the bureau or its designee, which, in the opinion of the trial judge objectively should or would have aided in the arrest or prosecution of others who violated this subsection.** The accused shall have adequate opportunity to develop and make a record of all information and assistance so furnished.

(Emphasis added.) Here the majority holds that the "self-help" provision of § 41-29-139(f) is unconstitutionally vague. I agree. However, the majority further holds that the "self-help" provision can be severed. With that, I cannot agree. In my view, the entire subsection is unconstitutional because of the unconstitutionality of the "self-help" provision.

¶53. A statute cannot be severed if the legislative intent would be destroyed by severing the statute. ***Brown v. Stone,*** 378 So. 2d 218, 223 (Miss. 1980); ***Wilson v. Jones County Bd. of Supervisors***, 342 So. 2d 1293, 1296 (Miss. 1977); ***Ballard v. Mississippi Cotton Oil Co.***, 81 Miss. 507, 34 So. 533 (1903). In my view, the legislative intent will not be preserved by severing this subsection. This concept has also been observed by the United States Supreme Court. ***Frost v. Corporation Comm'n***, 278 U.S. 515, 525, 49 S. Ct. 235, 239, 73 L. Ed. 483 (1929).[(4)] In ***Frost*** the court held that the scope of a statute cannot be broadened by striking down the exemption provision, because the legislative intent to exclude is expressed and therefore, it is clear. Here, the legislature intended that there be a mechanism for sufficiently cooperative defendants to avoid the harsh sentences required by this subsection. Even though the subsection is inartfully drawn, with regard to the "self-help" provision, the legislative intent is clear.

¶54. In ***Davis v. Wallace***, 257 U.S. 478, 484, 42 S. Ct. 164, 166, 66 L. Ed. 325 (1922), the United States Supreme Court held that even where an exception provision is held unconstitutional, it "does not make the provision any less a key to the intention of the Legislature or enable the [State] to subject [those individuals that would have been exempted by the provision] to other provisions form the act as the whole shows the Legislature intended to except them." Therefore, here § 41-29-139(f) cannot be expanded to include one who "furnishes information and assistance to the bureau or its designee, which, in the opinion of the trial judge objectively should or would have aided in the arrest or prosecution of others who violated this subsection." The majority holds that the exemption provision is unconstitutionally vague. Because the provision is vague, it is impossible to say who the legislature meant to exempt. Without the knowledge of who is exempt under the "self-help" provision and with the knowledge of ***Davis*** and ***Frost*** that the statute cannot be expanded to include exempt parties, we must hold the entire statute is unconstitutional, because it is not clear to whom the statute applies.

¶55. To sever the exemption provision from the Act would impose criminal liability on a class of individuals which the legislature sought to exclude from coverage and thus would be contrary to clearly expressed legislative intent. ***Tattered Cover, Inc. v. Tooley***, 696 P.2d 780, 786 (Colo. 1985) (where an exemption clause is unconstitutional, the entire provision is unconstitutional).

¶56. For the foregoing reasons, I dissent.

**PRATHER, C.J., PITTMAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶57. In the majority's haste to affirm the conviction of Lewis under a blatantly unconstitutional statute, a key issue raised by Lewis was overlooked. This Court has sidestepped the issue of multi-count indictments before in ***Medina v. State***, 688 So. 2d 727, 731 (Miss. 1996) but in this case the majority refuses to even address it. The majority is correct in finding the "self-help" provision in subsection (f) of Miss. Code Ann. § 41-29-139 unconstitutional as it is overly broad and vague. However, I would urge this Court to go a step further and declare the entire statute unconstitutional as it allows for multiple, unrelated offenses to be heard in one trial, thus prejudicing any individual indicted under the statute. For these reasons, I would reverse the trial court's judgment and vacate Lewis's conviction and sentence. Accordingly, I dissent.

¶58. When a statute under which someone is convicted is later held to be unconstitutional and void, that conviction cannot be affirmed. In ***Carley v. State***, 382 So. 2d 1090, 1091 (Miss. 1980), this Court

reversed the defendant's conviction under the State "fondling" statute. The defendant in *Carley* charged that the statute he had been convicted under was unconstitutional and violated the equal protection clause in that it applied only to male persons. In finding merit in the defendant's argument this Court held:

> **Unfortunately, the assignment of error is well taken, and in *Tatro v. State*, 372 So. 2d 283 (Miss. 1979), we held the statute unconstitutional. We have no alternative but to reverse the conviction and discharge the appellant thereon.**

(Emphasis added.)

¶59. As cited by this Court in *Carley*, Tatro was convicted and sentenced to eight years in prison for the crime of fondling. The statute under which he was convicted was deemed unconstitutional by this Court due to being "clearly discriminatory," and the appellant's conviction was reversed and he was discharged. *Tatro*, 372 So. 2d at 285. The majority affirms Lewis's conviction by severing the statute. However, it is not just the self-help provision, but the entire statute, which is unconstitutional.

¶60. The indictment returned by the grand jury pursuant to Miss. Code Ann. § 41-29-139(f) violates Rule 7.07 of the Uniform Circuit Court Rules and Miss. Code Ann. § 99-7-2 by charging the defendant with two or more offenses (five in this case) and forcing Lewis to defend all five charges in one trial. Joinder of two or more offenses in the same indictment is only permitted when certain restrictions are overcome. The multiple offenses must be based on the same act or transaction or must be part of a common plan or scheme. *Gray v. State*, 549 So. 2d 1316 (Miss. 1989). In the present case, neither of these requirements is met.

¶61. In *Gray*, eight separate counts were brought against the defendant charging him with eight separate harassing phone calls made over a two-week period. (In the case at hand the multiple sale of drugs occurred over a three-month period). In vacating the defendant's conviction, this Court noted that the joinder of offenses could result in the jury using evidence of one crime to "infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged." *Gray*, 549 So. 2d at 1322, (quoting *Drew v. United States*, 331 F.2d 85 (D.C. Cir. 1964)).

¶62. Also of note in *Gray* is the fact that the very issue discussed by this Court was not raised by the defendant in his brief. However, the Court recognized that under the proper circumstances, there was a large body of case law authorizing the noticing of an issue on its own motion when "plain error" is noted and chose to rule. *Gray*, 549 So. 2d at 1321:

> It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice. The problem here deals with both the principle of a fair trial and with the defendant's presumption of innocence. The error arises from the multi-count indictment against this defendant. . . .

¶63. A multi-count indictment in this case also flies in the face of Mississippi Rule of Evidence 403 which permits the exclusion of relevant evidence that is substantially outweighed by the danger of unfair prejudice or that misleads the jury. When an indictment charges the defendant with more than one offense, the State is allowed to introduce evidence of other crimes which otherwise would be held inadmissible.

¶64. The offense charged by this indictment requires the State to prove Lewis committed five separate criminal acts. Such a method of prosecution renders a fair trial impossible. If the evidence is strong enough

to convince the jury of Lewis's guilt on any or more of the offenses, the jury would be prejudiced and could find such proof to be probative of his guilt on other counts where the evidence was not as strong. This all but eliminates a defendant's right to be presumed innocent, thus denying him due process guaranteed by both the State and United States Constitution.

¶65. The entire statute, Miss. Code Ann. § 41-29-139 (Supp. 1999), is vague and unconstitutional, warranting revision by our State's legislature. I would reverse Lewis's conviction and sentence as we have done in previous cases in which a defendant was convicted under a statute that was later deemed unconstitutional. Not only was Lewis convicted under an unconstitutional statute, his case was severely prejudiced at trial as multiple crimes were brought to the jury's attention. Accordingly, I dissent.

1. Miss. Code Ann. § 41-29-139(f) provides in part: "Except as otherwise authorized in this article, any person twenty-one (21) years of age or older who knowingly sells, barters, transfers, manufactures, distributes or dispenses during any twelve (12) consecutive month period: (i) ten (10) pounds or more of marihuana; (ii) two (2) ounces or more of heroin; (iii) two (2) or more ounces of cocaine or of any mixture containing cocaine as described in Section 41-29-105(s), Mississippi Code of 1972; or (iv) one hundred (100) or more dosage units of morphine, Demerol or Dilaudid, shall be guilty of a felony and, upon conviction thereof, shall be sentenced to life imprisonment and such sentence shall not be reduced or suspended nor shall such person be eligible for probation or parole, the provisions of Sections 41-29-149, 47-5-139, 47-7-3 and 47-7-33, Mississippi Code of 1972, to the contrary notwithstanding."

2. The transcript of the record is somewhat confusing as to when the telephone call was actually placed.

3. For purposes of clarity and efficiency, some of Lewis' assignments are combined and discussed in a different order than that in which he briefed them.

4. The statute in *Frost* was upheld because the exemption clause was not in the original section. It was added many years later by amendment after the original section was adopted. The Court rationalized that an invalid section could not replace a valid section. Therefore, the Court kept the original section without the amendment. 278 U.S. at 525, 49 S. Ct. at 239.